# SOUTHERN PACIFIC COMPANY ET AL. *v.* OLYMPIAN DREDGING COMPANY.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 78. Argued October 19, 1922.—Decided November 13, 1922.

1. By the Act of September 19, 1890, c. 907, 26 Stat. 453, Congress assumed jurisdiction of the subject of obstructions to navigation and committed to the Secretary of War all necessary administrative power over such obstructions. P. 208.
2. Under § 7 of that act, a new bridge over a navigable stream cannot lawfully be constructed by a railroad company before the location and plans have been approved by the Secretary of War; authority from the state legislature is not enough. P. 208.
3. The power of the Secretary to approve or disapprove includes the power to condition an approval. P. 208.
4. Where a railroad company, operating a lawful bridge, obtained the Secretary's approval for a new one nearby, upon the condition that it remove the old one and remove the piers from the river-bed to a specified depth below lowest water level as shown by an existing and specified gauge, and fully complied with the condition, leaving the channel unobstructed, *held*, that the condition was an authoritative determination of what was reasonably necessary to insure free and safe navigation, upon which the company was entitled to rely; and that where, many years later, the Government, by dredging, lowered the bed and surface of the river so that stumps of the piles that had constituted the old piers protruded above the new bed, forming an obstruction which damaged a vessel, the Railroad Company was not liable. P. 209.

270 Fed. 384, reversed.

CERTIORARI to a decree of the Circuit Court of Appeals which reversed a decree of the District Court dismissing a libel in admiralty for damages due to collision of the present respondent's vessel with an obstruction in a navigable channel.

*Mr. William R. Harr*, with whom *Mr. William F. Herrin*, *Mr. F. J. Foulds* and *Mr. Geo. K. Ford* were on the brief, for petitioners.

*Mr. Thomas E. Haven,* with whom *Mr. Frank Hall, Mr. James S. Spilman, Mr. Fred G. Athearn, Mr. A. E. Chandler* and *Mr. Milton T. Farmer* were on the brief, for respondent.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

In 1895 the California Pacific Railroad Company, one of the petitioners, was authorized by the Legislature of the State of California to construct, and did construct, a railroad bridge across the Sacramento River. For some years prior to that time this company had owned and both petitioners had used another bridge situated in the near vicinity. Upon the construction of the new bridge in 1895 the old bridge was abandoned and demolished. The plans and location of the new bridge, so authorized by the legislature, received the formal approval of the Secretary of War, in conformity with § 7 of the Act of September 19, 1890, c. 907, 26 Stat. 454, as amended by § 3 of the Act of Congress of July 13, 1892, c. 158, 27 Stat. 110, subject to the following condition:

" That said Railway Company, within 90 days after the completion of the new bridge shall remove every portion of the present existing bridge, the old piers to be removed from the bed of the river to a depth of seven (7) feet below the level of the lowest low water, being a reading of 7.5 feet on the K Street gauge, Sacramento, California."

The new bridge was finished in 1895 and the destruction of the old bridge was completed early in the following year. The condition imposed by the Secretary of War was fully complied with. Indeed it appears that the piles constituting the piers of the old bridge were cut down three or four feet lower than was required, to a level with or below the then existing bed of the river.

Subsequent to the removal of the piles the Government of the United States constructed a wing dam above and

carried on dredging operations immediately below the bridge, so that the bed of the river was gradually lowered until, in 1918, when the injury in question occurred, the surface of the water was about seven feet lower than at the time the piles were destroyed, although the depth of the water remained approximately the same, with the result that the old stumps protruded several feet above the then existing bed of the river.

There is nothing to indicate that either of the petitioners had actual knowledge of the changed conditions which brought about the protrusion of the old piles above the bed of the river, or any knowledge that these piles were a menace to navigation.

On July 13, 1918, the dredger "Thor," owned by respondent, on her way down the river, drifting with the current, struck on one or more protruding stumps, the upper portion of which had been destroyed, with the result that her hull was pierced and she sank.

The respondent filed a libel in the United States District Court for the Southern District of California against petitioners, asking damages for collision and, after hearing, that court dismissed the libel. The Circuit Court of Appeals, reversing the District Court, held that petitioners were liable for this injury, notwithstanding their full compliance with the condition imposed by the Secretary of War, upon the ground that it was reasonably probable in 1895 that the channel of the river would shift and the conditions ensue which brought about the lowering of the river bed, and that, consequently, it was their duty to anticipate and to guard against the effect of these conditions upon the piles and their failure to do so was actionable negligence.

We are unable to agree with this conclusion. By the Act of September 19, 1890, 26 Stat. 453–454, Congress inaugurated a new policy of general, direct control over the navigable waters of the United States. The act pro-

vided for the alteration of existing bridges which inter-
fered with free navigation (§§ 4 and 5); prohibited the
dumping of waste material in such waters so as to obstruct
navigation (§ 6); made it unlawful to build wharves,
piers, and other structures named, without the permission
of the Secretary of War, in such manner as to obstruct or
impair navigation; or to commence the construction of
any bridge over any such waters under any act of a state
legislature until the location and plans therefor had been
submitted to and approved by the Secretary of War; or to
excavate or fill, or in any manner to alter or modify the
course, location, condition or capacity of the channel of
said navigable water of the United States, unless ap-
proved and authorized by the Secretary of War (§ 7).
The amendment of 1892 did not alter § 7 in any respect
material to this inquiry.

By this legislation Congress assumed jurisdiction of
the subject of obstructions to navigation and committed
to the Secretary of War administrative power in so far
as administration was necessary. Under § 7, it was not
enough for the California Pacific Railroad Company to
secure the authority of the California legislature to build
the new bridge; it was necessary in addition to have the
location and plans approved by the Secretary of War
before the bridge could be lawfully constructed. That
the Secretary of War was authorized to impose the condi-
tion heretofore quoted does not admit of doubt. The
power to approve implies the power to disapprove and
the power to disapprove necessarily includes the lesser
power to condition an approval. In the light of this
general assumption by Congress of control over the sub-
ject and of the large powers delegated to the Secretary,
the condition imposed by that officer cannot be consid-
ered otherwise than as an authoritative determination of
what was reasonably necessary to be done to insure free
and safe navigation so far as the obstruction in question
was concerned.

To hold, as did the Circuit Court of Appeals, that this determination afforded no protection to petitioners, but that they relied upon it only at their peril, we think, is a conclusion without warrant. Having complied with the direction of the Secretary, and having no further interest in anything at that point on the river, it seems altogether unreasonable to hold them to an indefinite and speculative responsibility for future changed conditions. The piles had been removed early in 1896, with an over-generous observance of the directions of the Secretary. As matters then stood, the removal of the piles, so far as they constituted any obstruction or menace to navigation was complete; that they afterwards became an obstruction was due to changes of a most radical character in the channel of the river brought about, in the main, by the dredging operations of the Government itself. Was the petitioner guilty of negligence in not anticipating the effect of these changes, which did not culminate in the conditions complained of until twenty-two years later? The question must be answered in the negative.

The order of the Secretary of War, directing the removal of the old piles from the bed of the river to the depth there specified, was a valid order, since it was the condition upon which his approval of the location and plans of the new bridge was made. The new bridge was in the near vicinity of the old bridge, for which it was, in fact, a substitute. The effect which the continued maintenance of the latter after the completion of the former might have had upon the navigability of the river at that point is not disclosed. The Secretary of War evidently concluded that the situation was such as to require the removal of the old bridge and piles, but not such as to require the removal of the latter beyond the depth fixed by his order. Whether the limitation in this respect was grounded alone upon what the Secretary considered would be sufficient to secure the safety of navigation, or upon the

fact that to leave the stumps in the bed of the river would be of some positive service in stabilizing the shifting bed of the stream, or useful in some other way, does not appear. It was not for the petitioners, however, to question either his reasons or his conclusions. They were justified in proceeding upon the assumption that what the Secretary, in the exercise of his lawful powers, declared to be no obstruction to navigation was in fact no obstruction. The language which this Court employed in *Monongahela Bridge Co.* v. *United States,* 216 U. S. 177, 195, is pertinent:

". . . Congress intended by its legislation to give the same force and effect to the decision of the Secretary of War that would have been accorded to direct action by it on the subject. It is for Congress, under the Constitution, to regulate the right of navigation by all appropriate means, to declare what is necessary to be done in order to free navigation from obstruction, and to prescribe the way in which the question of obstruction shall be determined. Its action in the premises cannot be revised or ignored by the courts or by juries, except that when it provides for an investigation of the facts, upon notice and after hearing, before final action is taken, the courts can see to it that Executive officers conform their action to the mode prescribed by Congress."

See also *Union Bridge Co.* v. *United States,* 204 U. S. 364, 385; *The Douglas,* 7 Prob. Div. [1882], 157; *Frost* v. *Washington County R. R. Co.,* 96 Me. 76; *Maine Water Co.* v. *Knickerbocker Steam Towage Co.,* 99 Me. 473; *The Plymouth,* 225 Fed. 483.

Even if we leave out of consideration altogether the order of the Secretary of War, it is still difficult to see upon what just ground petitioners could be held liable.

The changes which occurred in the bed of the river were not due to natural causes, whose effect could reasonably have been anticipated, but were due to the arti-

ficial operations of the Government the effect of which appeared only after the lapse of a long period of years.

We agree with what was said by the District Court, in deciding the instant case, upon that subject:

" While the Railroad Company was perhaps required to take notice of ordinary changes in the course or channel of the stream from natural causes and provide against any injury that might result from such changes, it could not, in my opinion, be required to take notice of such radical changes as occurred here by the acts of the Government over which it had no control and which it had no reason to anticipate or provide against."

The opinion of the Circuit Court of Appeals is that the question of liability was not affected by the fact that the conditions imposed by the Secretary of War were complied with, holding that these conditions or restrictions did not define the measure of liability to third persons rightfully navigating the river, and *Maxon* v. *Chicago & Northwestern Ry. Co.*, 122 Fed. 555, is relied upon in support of this view. That was a case, however, where a railroad company had constructed a bridge in conformity with the license granted by the War Department. The obstruction which caused the injury complained of consisted of stone and other material thrown into the river by the railroad company at the foot of and about one of the bridge abutments, and extending out into the channel; but it was no part of the bridge structure and was entirely unauthorized. The court held that the tug which collided with the obstruction had a right to the use of the channel to its full width and having no knowledge or warning of the presence of the obstruction was entitled to recover for the resulting injury. The stone and other material were unlawfully thrown into the stream and constituted from the beginning an unlawful obstruction. In the instant case the piles forming part of the old bridge were lawfully placed and lawfully maintained until they were

ordered removed by the Secretary of War. His order for their removal was complied with, and the channel was left by petitioners wholly unobstructed, in law and in fact. The obstruction did not develop until years afterward and was due to causes which they were not bound to anticipate and provide against and for which they were in no degree responsible.

The decree of the Circuit Court of Appeals is therefore reversed and that of the District Court affirmed.

*Reversed.*