**STATE OF OREGON, By and Through its STATE HIGHWAY COMMISSION, composed of Glenn L. Jackson, Kenneth N. Fridley and David B. Simpson, Plaintiff,**

**v.**

**TUG GO-GETTER, her engines, apparel and equipment, Sause Bros. Ocean Towing Co., an Oregon corporation, Oliver J. Olson & Co., a California corporation, Olson Towboat Co., a California corporation, Charles May and John G. Davis, Defendants.**

**Petition of SAUSE BROS. OCEAN TOWING CO., Inc., a corporation, for Exoneration from or Limitation of Liability, as the Owner of the Tug Go-Getter.**

**Civ. Nos. 66-499, 66-521.**

United States District Court
D. Oregon.
March 17, 1969.

Robert Y. Thornton, Atty. Gen. of Oregon, George E. Rohde, Chief Counsel for Oregon State Highway Commission, Frank C. McKinney, Asst. Counsel, Salem, Or., William F. White, Special Asst. Counsel, White, Sutherland & Gilbertson, Portland, Or., for plaintiff and claimant, State of Oregon.

Samuel L. Holmes, Angell, Adams & Holmes, San Francisco, Cal., Walter H. Evans, Jr., Portland, Or., for defendants Oliver J. Olson & Co. and Olson Towboat Co.

Carl R. Neil, Krause, Lindsay & Nahstoll, Portland, Or., for defendants Tug GO-GETTER, Sause Bros. Ocean Towing Co. and John G. Davis and petitioner Sause Bros. Ocean Towing Co.

Richard V. Bayless, Winfree, Murphy & Bayless, Portland, Or., for defendant Charles May.

## AMENDED OPINION

SOLOMON, Chief Judge:

### PARTIES AND CLAIMS

These actions arose when a barge, in tow of a tug, struck the pier of a bridge, causing damage to the bridge and the barge. This Court has jurisdiction under 28 U.S.C. § 1333.

The State of Oregon (State) operates Bullards Bridge, crossing the Coquille River about two nautical miles upstream from Bandon, Oregon. In the mid-afternoon of October 4, 1966, the tug GO-GETTER with the barge J. WHITNEY in tow proceeded up the Coquille River from Bandon. John G. Davis (Davis), master of the GO-GETTER, operated the tug halfway to the bridge, when Charles May (May) took control. As the GO-GETTER and the J. WHITNEY passed under the bridge, the barge's starboard bow struck the bridge's southeast pier.

May is employed by the Olson Towboat Co. (Olson Towboat), Davis works for Sause Bros. Ocean Towing Co. (Sause), owners of the GO-GETTER. The J. WHITNEY is chartered by Oliver J. Olson & Co., (Olson) and, for the purposes of this opinion, Olson is considered the owner of the barge.

The State seeks to collect from the GO-GETTER, Sause, Olson, Olson Towboat, May and Davis for damage to the bridge.

Sause seeks indemnity from Olson, Olson Towboat, and May, and seeks towage from Olson for towing the J. WHITNEY.

Olson seeks payment from the State and Sause for damages to and loss of the use of the J. WHITNEY, and claims indemnity from Sause and GO-GETTER.

Olson Towboat seeks indemnity from Sause.

Davis seeks indemnity from Olson, Olson Towboat, and May.

May seeks no affirmative relief.

In addition, Sause petitioned for exoneration from or limitation of liability as owner and operator of the GO-GET-TER. 46 U.S.C. § 183. The State, Olson, and Olson Towboat resist any such exoneration or limitation.

Other issues raised by the pleadings, including damages, have been segregated for later disposition.

### BASIC FACTS

May, the master of the JEAN NELSON, a tug owned by Olson Towboat, towed the J. WHITNEY from Yaquina Bay to Bandon on October 4, 1966. The JEAN NELSON is not capable of navigating the Coquille River past Bandon. Thomas Miller (Miller), an employee of both Olson and Olson Towboat, arranged with Curtis Sause, vice-president of Sause, to supply a tug to take the J. WHITNEY through Bullards Bridge to the Rogge Mill. Shortly before, Edward Whitney Olson, president of Olson, and Paul Sause, an officer of Sause, made the same arrangement. All parties to these conversations knew and expected that the Sause tug would tow the Olson barge through Bullards Bridge without assistance.

Davis, on the GO-GETTER, met the JEAN NELSON outside Bandon and sounded the bar for her. At Bandon, the JEAN NELSON docked, several of her crew boarded the J. WHITNEY on orders from May and a drag chain was attached to the barge's stern. The chain, which weighed about 4½ tons, was intended to keep the barge in line as it passed through the bridge. The barge was sixty-eight feet wide; the bridge span was seventy-seven feet wide. The barge was towed bow first and was carrying about 400,000 board feet of timber, ten per cent of its capacity.

Earlier, Curtis Sause had instructed Davis to have May operate the GO-GETTER, if possible. Davis relayed the message to May, who agreed. Curtis Sause was aware that the controls on the GO-GETTER had been altered since May was master of the tug, in 1954. He knew it was the custom to use two tugs in bringing barges through Bullards Bridge. Two months earlier, the J. WHITNEY struck the side of Bullards

Bridge while in tow of the Sause tug NATOMA, causing $200 in damages. Curtis Sause was aboard the NATOMA at this time. Curtis Sause also knew the limits of the GO-GETTER'S power and that southerly winds are expected around Bandon in October.

Halfway between the bridge and Bandon, May took control of the GO-GETTER. He crowded the north side of the river, increased his speed, angled to the south and then, intending to accelerate the starboard engine to regain a central position, accidentally knocked the clutch out of gear for about ten seconds. The flotilla continued drifting south until the starboard bow of the barge crashed into the southeast pier of the bridge.

## PRELIMINARY ISSUES

The pleadings raise several issues. I dispose of two contentions at the outset. I find that Olson and Olson Towboat are separate corporations and neither is the alter ego of the other. There is an overlap in ownership. But none of the traditional reasons exists to disregard the corporate entity of either company. McIver v. Norman, 187 Or. 516, 213 P.2d 144, 13 A.L.R.2d 749 (1949).

I also find that the State was free from negligence.

Olson claims that the State is liable for damages to the J. WHITNEY because Bullards Bridge was an unreasonable interference with navigation on the date of the collision. All the defendants assert this claim as a defense to the State's action against them. The State argues that sovereign immunity protects it from suit on this ground, and that, in any event, this Court does not have jurisdiction to decide that the bridge was a negligent structure.

■ Sovereign immunity will not protect the State from an action for negligence in the operation or maintenance of one of its bridges. When a state seeks permission from the federal government to build a bridge over a navigable waterway, it waives its sovereign immunity. Chesapeake Bay Bridge and Tunnel v. Lauritzen, 404 F.2d 1001 (4th Cir. 1968).

■ There is no merit in the State's claim that this Court does not have jurisdiction over Olson's counterclaim. Jurisdiction to hear Olson's claim is granted by 28 U.S.C. §§ 1333 and 1337. Moreover, if this Court did lack jurisdiction, it could hardly grant summary judgment under Rule 56(b) as the State urges. Moore, Federal Practice ¶ 12.09.

Nevertheless, Olson's claim must fall, and summary judgment granted to the State, because there is no issue of fact, and, as a matter of law, Bullards Bridge was not an unreasonable or improper interference with navigation on October 4, 1966. Rule 56, Fed.R.Civ.P.

On the day of the collision, Bullards Bridge was in the structural condition originally authorized by the Chief of Engineers and the Secretary of the Army. There is no claim that these officials had, prior to the day of the collision, ordered structural changes.

Bullards Bridge was built under authority delegated by the Congress to the Chief of Engineers and the Secretary of the Army. 33 U.S.C. § 525 et seq. In order to hold that the bridge unreasonably interferes with navigation because it lacked dolphins or fenders, I must find that its existence was so unreasonable as to be a denial of due process.

Several cases hold that a bridge built in accordance with Congressional authority cannot be an improper or unreasonable structure, absent arbitrary activity. Texas and Pacific Ry. Co. v. Angola Transfer Co., 18 F.2d 18 (5th Cir. 1927). Gildersleeve v. New York, N. H. & H. R. Co., 82 F. 763 (S.D.N.Y. 1897). Monongahela Bridge v. United States, 216 U.S. 177, 30 S.Ct. 356, 54 L.Ed. 435 (1910). In *Monongahela*, the Secretary of War had determined that a bridge was an unreasonable obstruction to navigation. The owners failing to remove it as ordered, were prosecuted.

The Supreme Court affirmed a conviction, stating:

"It was not for the jury to weigh the evidence and determine, according to *their* judgment, as to what the necessities of navigation required, or whether the bridge was an unreasonable obstruction. The jury might have differed from the Secretary. That was immaterial; for Congress intended by its legislation to give the same force and effect to the decisions of the Secretary of War that would have been accorded to direct action by it on the subject. It is for Congress, under the Constitution, to regulate the right of navigation by all appropriate means, to declare what is necessary to be done in order to free navigation from obstruction, and to prescribe the way in which the question of obstruction shall be determined. Its action in the premises cannot be revised or ignored by the courts or by juries. * * * Learned counsel for the defendant suggests some extreme cases, showing how reckless and arbitrary might be the action of executive officers proceeding under an act of Congress, the enforcement of which affects the enjoyment or value of private property. It will be enough time to deal with such cases when they arise." 216 U.S. at 195, 30 S.Ct. at 361.

This language was quoted with approval in Southern Pacific Co. v. Olympian Dredging Co., 260 U.S. 205, 210, 43 S. Ct. 26, 67 L.Ed. 213 (1922).

The State could not have altered the structure of Bullards Bridge by the addition of dolphins and fenders without the authorization of the Chief of Engineers and the Secretary of the Army. United States v. Ingram, 203 F.2d 91 (8th Cir. 1953).[1]

■ Defendants claim that the State had an obligation to petition the appropriate officials for permission to make changes in the bridge's structure. The State could have done this, but I do not believe the State owed this duty to the defendants. The Chief of Engineers and the Secretary of the Army could have acted without a request, or the defendants themselves could have requested that the changes in the bridge be ordered.

As an additional basis for their claim, defendants argue that 33 U.S.C. §§ 401 et seq. gives them a cause of action against the State for the unreasonable interference with navigation caused by the bridge. The State asserts that no cause of action is provided by the statute.

■ 33 U.S.C. §§ 401 et seq., entitled "Protection of Navigable Waters and of Harbor and River Improvements Generally," specifies the rules governing the construction and removal of bridges. It does not authorize *in personam* actions against one who violates its provisions. However, the Supreme Court has held that a cause of action in favor of the United States can reasonably be inferred against one who violates the statute and forces the government to spend money to remove an unauthorized obstruction. Wyandotte Transp. Co. v. United States, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967). Lower courts have held that in pending private civil actions, a rebuttable presumption of negligence is raised against one who violates the statute. Morania Barge No. 140 v. M & J Tracy, Inc., 312 F.2d 78 (2d Cir. 1962); Lauritzen v. Chesapeake Bay Bridge and Tunnel District, 259 F.Supp. 633 (E.D.Va.1966).

■ These cases are of no help to the defendants. Here, there is no violation

---

1. "* * * when plans for any bridge or other structure have been approved by the Chief of Engineers and the Secretary of the Army, it shall not be lawful to deviate from such plans either before or after completion of the structure un- less the modification of said plans has previously been submitted to and received approval of the Chief of Engineers and of the Secretary of the Army." 33 U.S.C. § 401.

of the statute. Plaintiff's bridge complied with the relevant regulations, and no presumption of negligence can arise. 33 U.S.C. §§ 525 et seq. Morania Barge No. 140 v. M & J Tracy, Inc., *supra.*

Finally, the defendants cite Oregon-Washington Bridge Co. v. The Lew Russell, 196 F.2d 707 (9th Cir. 1952). There, the bridge conformed with the authorization for its construction. The operational defect creating liability was the failure to have an auxiliary, manual warning device to notify vessels when the draw was unable to open. The relevant regulations neither required nor prohibited a secondary warning system. The Court held that the regulations were not the exclusive test of negligence in the operation of a bridge.

Here, the claimed act of negligence—the structure of the bridge—was approved by the Congressional delegatees. There was no failure to perform a reasonable ministerial act in the operation of an approved bridge. Defendants contend that a bridge reasonably approved by Congress is nevertheless a negligent structure. I disagree. Under the circumstances of this case, there is no merit in the defendants' contention that Bullards Bridge was an unreasonable restraint on navigation.

## CAPTAIN MAY'S NEGLIGENCE

When a moving vessel hits a stationary object, there is a presumption that the vessel was negligent. The Louisiana, 3 Wall. 164, 70 U.S. 164, 18 L.Ed. 85 (1865); The Oregon, 158 U.S. 186, 15 S.Ct. 804, 39 L.Ed. 943 (1895); Pacific Tow Boat Co. v. States Marine Corp. of Delaware, 276 F.2d 745, 750 (9th Cir. 1960) (presumption sufficient to establish a prima facie case). This presumption shifts the burden of going forward to the defendant vessel. If the vessel offers "evidence to the contrary * * *, the presumption disappears as a rule of law * * *." 9 Wigmore, Evidence (3d Ed. 1940) § 2491; Pennsylvania R.R. Co. v. S.S. Marie Leonhardt, 320 F.2d 262 (3rd Cir. 1963). But a "presumption of fact" or, more properly,

an inference of negligence "as a matter of reasoning may still remain." 9 Wigmore, *supra.*

In Patterson Oil Terminals v. The Port Covington, 109 F.Supp. 953 (E.D. Pa.1952), the Court said:

"The common sense behind the rule makes the burden a heavy one. Such accidents simply do not occur in the ordinary course of things unless the vessel has been mismanaged in some way." 109 F.Supp. at 954.

Defendants have not met their burden of going forward, but even without the presumption, I find that the collision resulted from negligence.

Captain May, who had towed a barge through the Bullards Bridge only once before, was unfamiliar with the GO-GETTER's controls. The wind was blowing at 20 miles per hour. Captain May crowded the north side of the river, went too fast, evidently misjudged the tide and weather conditions, and knocked the GO-GETTER's clutch out of gear at a crucial moment. In my opinion, prudence demanded that an assisting tug be used to take the 68-foot barge through the 77-foot span. This is particularly true in view of the wind, tide, and weather conditions. An assist was available, but not requested.

## SAUSE'S LIABILITY TO THE STATE

Sause is liable to the State for Captain May's negligence because in conducting the maneuver, he was Sause's agent. Sause is also liable for the damage to Bullards Bridge because it negligently permitted a single tug to be used in a delicate operation under adverse weather conditions and under control of a master who was not acquainted with the tug's controls, all of which Curtis Sause knew. Finally, Sause is not entitled to limitation or exoneration of liability under 46 U.S.C. § 183 because the unreasonable nature of the operation was within the privity and knowledge of Curtis Sause, one of its officers. The

Princess Sophia, 61 F.2d 339, 346 (9th Cir. 1932).

■ Sause agreed to tow Olson's barge through Bullards Bridge to Rogge Mill.[2] Sause, through its employee Davis, requested Captain May to conduct the operation. Sause cannot avail itself of Captain May's skills and then disown him when he commits a tort within the scope of his employment. While performing the job requested, Captain May negligently injured the plaintiff's bridge, and Sause is liable for this negligence. Todd Shipyards Corp. v. Moran Towing & Transp. Co., 247 F.2d 626 (2d Cir. 1957). Restatement, Second, Agency, § 219. One who serves without pay may still be a servant. Restatement, supra, § 225. General Ins. Co. v. Saskatchewan Gov't Ins. Office, 238 Or. 8, 391 P.2d 616 (1964).

### SAUSE'S LIABILITY TO OLSON

■ Likewise, Sause is liable, without limitation, for the damage to the J. WHITNEY. This liability is predicated on Captain May's negligence while Sause's agent, and Sause's own negligence in authorizing an unreasonable operation.

■ The GO-GETTER "was bound to bring to the performance of the duty she assumed reasonable skill and care, and to exercise them in everything relating to the work, until it was accomplished. The want of either in such cases is a gross fault, and the offender is liable to the extent of the full measure of the consequences." The Margaret, 94 U.S. 494, 497, 24 L.Ed. 146 (1876). Stevens v, The White City, 285 U.S. 195, 52 S.Ct. 347, 76 L.Ed. 699 (1932). "[W]hen a tug undertakes to tow more than she can reasonably be expected to tow through weather reasonably to be expected on the voyage, there is fault." Hendry Corp. v. Aircraft Rescue Vessels, 113 F.Supp. 198, 202 (E.D.La.1953).

Olson concedes that Sause is entitled to a set-off of $537.50 in towing charges

from Sause's liability for the damage to the J. WHITNEY and the loss of her time.

### OLSON TOWBOAT'S LIABILITY TO THE STATE

■ Olson Towboat is vicariously liable to the State for Captain May's negligence. One can simultaneously serve two masters. Restatement, supra, § 226. Williams v. Pennsylvania R.R. Co., 313 F.2d 203, 208–209 (2d Cir. 1963). In operating the GO-GETTER's controls Captain May was serving Olson Towboat as well as Sause.

Captain May was performing the type of work he customarily performed for Olson Towboat. If an Olson Towboat tug were available, Captain May would unquestionably have been in charge. The tow was owned by a company closely connected to the company that employed him. It was in the interest of the owners of Olson Towboat that the Olson barge complete its assignment.

Captain May's service on the GO-GETTER was close in time and space to the task, just completed for Olson Towboat, of taking the Olson barge to Bandon. His actions were motivated by a desire to serve Olson Towboat. Captain May believed he was authorized to perform such services, and he had done it in the past.

Olson Towboat agrees that Captain May was its employee as far as Bandon, but claims his employment ceased when he boarded the GO-GETTER. I disagree. In operating the tug, Captain May remained within the scope of his employment. Olson Towboat may not narrow that scope in retrospect when liability is likely.

### THE GO-GETTER'S LIABILITY TO THE STATE

■ The GO-GETTER is liable in rem for the negligence of its master

---

2. I do not view the relationship between Olson and Sause as one in which Sause merely lent a tug to Olson. This was a towage contract, not one of bailment.

and its owner. Young Bros. Ltd. v. John Cho, 183 F.2d 176, 177 (9th Cir. 1950).

## THE STATE'S ACTION AGAINST OLSON

 The State's action against Olson is without merit. The J. WHITNEY was not at fault in the collision, and Olson is not liable for the negligence of Captain May. The fact that it was within the scope of May's employment with Olson Towboat to aid the J. WHITNEY in reaching its destination will not make Olson liable for May's negligence for I have already found Olson was not the alter ego of Olson Towboat.

## THE STATE'S ACTION AGAINST CAPTAIN DAVIS

 Captain Davis is also without fault. He obeyed his superior's order to let Captain May conduct the maneuver. Davis had never taken a barge through Bullards Bridge. He reasonably understood that May was in charge. Nothing he did or failed to do contributed to the accident.

## THE CLAIMS FOR INDEMNITY AND CONTRIBUTION

Olson Towboat seeks indemnity from Sause and the GO-GETTER. Sause seeks indemnity from Olson Towboat and May. I conclude that neither party is entitled to the indemnity it seeks.

 Sause is not entitled to indemnity from Olson Towboat. The law will not imply a right of indemnity in favor of an active tortfeasor against his joint-tortfeasor's employer. Amerocean S.S. Co. v. Copp, 245 F.2d 291 (9th Cir. 1957). For the same reason, Sause is not entitled to indemnity from Captain May. Its own negligence, as well as its vicarious liability for Captain May's negligence, was a cause of the loss.

 Olson Towboat, which is vicariously liable for May's negligence, is not entitled to indemnity from Sause, May's joint-tortfeasor, for the damages it may be required to pay the State. This is true because an employer, who is vicariously liable for his employee's tort, is not entitled to indemnity from his employee's joint-tortfeasor. The employer's liability results from his employee's negligence and not the negligence of the joint-tortfeasor and the law will not imply a right to indemnity from the latter.[2]

The damages to Bullards Bridge and the J. WHITNEY (including the loss of her time) should be divided between Captain May and Olson Towboat, on one hand, and Sause and the GO-GETTER, on the other. Pennsylvania R. Co. v. SS Beatrice, 161 F.Supp. 136 (S.D.N.Y. 1958) aff'd 275 F.2d 209 (2d Cir. 1960). In the *Beatrice,* a shipowner (Bull), a Captain (Mattisen), and a tug (Gillen) were all negligent in causing damage to a barge. In addition, Bull and another, Dalzell, were both vicariously liable for Mattisen's negligence. The damages were divided equally between Bull, Dalzell and Gillen. Bull was held liable for only one-third the damage, even though it was negligent in its own right and vicariously liable for Mattisen's negligence as well. Likewise, Sause should be liable for only one-half the damage. The only difference here is that May is a party, while Mattisen was not.

To the extent that either Sause and the GO-GETTER, or Olson Towboat and May, are required to pay more than one-half of the total damage, either interest may seek contribution from the other. Sause may set-off its towing charge against its share of the liability to Olson.

2. The Restatement of Agency (Second) and of Restitution recognize a right to *contribution* between joint-employers when one of them has satisfied a tort obligation of a common employee for which both were liable. Restatement, Second, Agency § 317A; Restatement, Restitution §§ 87, 99. Whatever the merits of the Restatements' position, its application is unnecessary in an admiralty case, where the divided damages rule is available.