682 P.2d 443

**ARIZONA DOWNS, an Arizona corporation, Plaintiff-Appellee Cross-Appellant,**

v.

**TURF PARADISE, INC., an Arizona corporation, Defendant-Appellant Cross-Appellee.**

**ARIZONA DOWNS, an Arizona corporation, Plaintiff-Appellant,**

v.

**ARIZONA RACING COMMISSION, an agency of the State of Arizona; and Michael J. O'Haco, Chester E. Johns, John K. Goodman, L. Wardell Larson and Ronald A. Lebowitz, as members of and constituting the Arizona Racing Commission; Arizona Horsemen's Foundation, Inc., an Arizona corporation; and State of Arizona, Defendants-Appellees.**

**No. 1 CA–CIV 6045.**

Court of Appeals of Arizona, Division 1, Department D.

March 13, 1984.

Romley & Sherk by Elias M. Romley and Roger T. Hargrove, Phoenix, for Arizona Downs.

Jennings, Strouss & Salmon by Neil Vincent Wake, David L. White and Jefferson L. Lankford, Phoenix, for Turf Paradise.

Robert K. Corbin, Atty. Gen. by Evelyn R. Epstein, Asst. Atty. Gen., Phoenix, for appellee Arizona Racing Com'n.

Snell & Wilmer by George H. Lyons and Robert J. Gibson, Phoenix, for Arizona Horsemen's Foundation.

## OPINION

HAIRE, Presiding Judge.

This appeal represents an additional chapter in the continuing litigation involving Arizona Downs, Turf Paradise, Inc., and the Arizona Racing Commission, relating primarily to questions concerning the allocation of racing dates and the interpretation of Arizona statutes granting racing date preferences to prior permittees. Also involved in practically all of the litigation between these parties are questions concerning the validity and binding effect of a 1956 agreement between Arizona Downs and Turf Paradise providing for the lease of the racetrack facilities of Turf Paradise to Arizona Downs, and also containing an agreement for the allocation of available racing dates between Turf Paradise and Arizona Downs.[1]

In the proceeding which is the subject of this opinion, Turf Paradise has appealed and Arizona Downs has cross-appealed from a judgment entered by the Maricopa County Superior Court. Once again, the questions raised focus upon a Racing Commission decision allocating racing dates and

the effect, if any, to be given to the 1956 agreement between Arizona Downs and Turf Paradise. Specifically, the case involves a decision issued by the Arizona Racing Commission in August 1980, concerning the allocation of racing dates, the maintenance of Turf Paradise racetrack facilities, and the hiring of racing officials for the 1980–1981 racing season.

The Commission's 1980 decision allocated the available racing dates for the 1980–81 racing season among three applicants. The decision allocated 72 days to Turf Paradise, 51 days to Arizona Downs, and 30 days to Arizona Horsemen's Foundation, with all three racing meets to be conducted at Turf Paradise's racing facilities. Additionally, the Commission's decision required that each permittee pay a proportionate share of the annual maintenance costs for the Turf Paradise racetrack facilities at which all three permittees would be conducting their racing meetings, i.e., Turf Paradise would pay $72/153$rds, Arizona Downs $51/153$rds and Arizona Horsemen's Foundation $30/153$rds of the annual maintenance expenses. The Commission's decision also required that all permittees use their best efforts to agree upon the hiring of the same racing officials for all three racing meets in order to achieve continuity and an orderly transition from one racing meeting to the next. It further provided that if the permittees could not agree on the selection of racing officials, the Commission would resolve the dispute.

Arizona Downs appealed to the Maricopa County Superior Court from the Commission's decision in accordance with A.R.S. § 5–108.01 and § 12–901 et seq. After re-

1. For reported decisions involving these parties, see *Arizona Downs v. Superior Court of Arizona, Maricopa County*, 128 Ariz. 73, 623 P.2d 1229 (1981); *Arizona Downs v. Arizona Horsemen's Foundation*, 130 Ariz. 550, 637 P.2d 1053 (1981); *Turf Paradise, Inc. v. Arizona Downs*, 670 F.2d 813 (9th Cir.1982) *cert. denied*, 456 U.S. 1011, 102 S.Ct. 2308, 73 L.Ed.2d 1308 (1982). In addition to the appeal which is the subject of this opinion, there are two other appeals involving these parties pending in this court, 1 CA–CIV 6942 (Maricopa County Cause No. C–371759)

and 1 CA–CIV 7275 (Maricopa County Cause No. C–455563). Additionally, there have been numerous special actions involving these same parties filed in the Arizona appellate courts which have been disposed of without published opinion. Finally, we note that the Arizona Supreme Court on November 10, 1983, refused to accept jurisdiction of a petition for special action, again involving these same parties, Arizona Supreme Court No. 17190–SA, filed Oct. 26, 1983.

viewing the record made before the Commission, the superior court affirmed the provisions of the Commission's decision concerning the allocation of racing dates, but reversed the provisions of the decision which required that Arizona Downs pay $^{51}/_{153}$rds of the annual maintenance expenses for the racing facility, and the provision that the Commission would resolve any disputes between the permittees relating to the hiring of qualified racing officials.

Turf Paradise has now appealed to this court from that part of the superior court's judgment which nullified the Commission's order requiring the payment of maintenance expenses by Arizona Downs, and also from the trial court's judgment finding invalid the Commission's order relating to the resolution of disputes concerning the hiring of racing officials. Arizona Downs has cross-appealed from that part of the superior court's judgment which affirmed the Commission's allocation of racing dates as between Arizona Downs and Arizona Horsemen's Foundation. The Commission has not appealed from any portion of the superior court judgment.

## THE TURF PARADISE APPEAL

█ As its first issue, Turf Paradise contends that the Racing Commission may, as a condition to the granting of a racing permit, require a permittee to pay a pro-rata share of the annual maintenance costs of the facility at which the permittee holds its racing meeting, and that the superior court erred in reversing the provisions of the Commission's decision which required Arizona Downs to pay such maintenance expenses. Opposing this contention, Arizona Downs urges that the 1956 agreement between it and Turf Paradise established a property right in Arizona Downs to use the Turf Paradise facilities, and that the Commission grossly abused its discretion by refusing to consider the property rights of the parties, and by ignoring the concomitant rights and obligations of the parties under that agreement insofar as concerns the maintenance of the facility and the compensation payable to Turf Paradise pursuant to that agreement. We agree that under the circumstances presented in the record before this court, the Commission abused its discretion on the maintenance issue, and therefore we affirm the provisions of the superior court judgment which reversed that portion of the Commission's decision which relates to maintenance.

In 1956 Turf Paradise and the predecessor in interest to Arizona Downs entered into an agreement which still remains in effect. By the terms of that agreement, Turf Paradise agreed to lease to Arizona Downs the Turf Paradise racetrack facilities "for such period of time [each year] as shall be allocated to [Arizona Downs] by authority of law for the purpose of conducting such racing meets." In consideration for the leasing of the facilities and in consideration of other obligations undertaken by Turf Paradise as a party to the 1956 agreement, Arizona Downs agreed to pay a yearly rental based upon a percentage of Arizona Downs "average daily mutuel handle" during its racing meet.[2] Under the agreement Arizona Downs also was obligated to keep and maintain the racing plant in good condition and in repair during Arizona Downs' period of occupancy. Under the terms of a 1961 addendum to the agreement, Arizona Downs was also required to pay a small additional amount annually to Turf Paradise for certain other maintenance expenses. The Commission's order ignored the rights and obligations of the parties under the 1956 lease agreement concerning maintenance of the facilities. Without regard to the payment by Arizona Downs of rental and the performance of its maintenance responsibilities under the lease, the Commission in its decision ordered the payment by Arizona Downs to Turf Paradise of the pro-rated total annual maintenance expenses as previously indicated. No contention has been raised that Arizona Downs had not fully complied with its maintenance, rental and other obliga-

**2.** This rental amount in 1980 totaled $459,528.

tions imposed under the 1956 agreement and the 1961 addendum.

In holding that the Commission erred in ordering Arizona Downs to pay a proportionate share of the annual maintenance expenses of Turf Paradise's racing facilities based upon the allocation of racing dates, the trial judge concluded as follows:

> "8. The Commission is without power and authority to require, *as a condition to Downs' permit*, that Downs pay to Turf one-third or any of the cost of the annual upkeep and maintenance of the racetrack. On this issue, the Commission abused its discretion and the condition so imposed is set aside."

(Emphasis in original).

In support of the Commission's maintenance decision, Turf Paradise relies primarily on the provisions of A.R.S. § 5–108(A)(1)(h), which authorize the Commission to refuse to issue a racing permit if there is substantial evidence to find that the applicant "should not, in the best interest of the safety, welfare, economy, health and peace of the people of the state, be granted a permit."[3] Based upon this statutory "best interests" standard, Turf Para-

dise urges that the Commission has the authority to deny a permit, and that the authority to deny includes the authority to condition the issuance of a permit upon a requirement that is consistent with the "best interests of the safety, welfare, economy, health and peace of the people of the state." *See Southern Pacific Co. v. Olympian Dredging Co.*, 260 U.S. 205, 43 S.Ct. 26, 67 L.Ed. 213 (1922); *Frost v. Railroad Commission*, 271 U.S. 583, 46 S.Ct. 605, 70 L.Ed. 1101 (1926).

■ As an abstract proposition, we do not question the validity of Turf Paradise's contention that under the statutory "best interests" standard, the Racing Commission could appropriately require that racing facilities be adequately maintained so as to protect the safety of the public and the economic interests of the state. In this connection, A.R.S. § 5–104(B) expressly requires the Commission to "... prepare and promulgate such complete rules and regulations to govern the racing meetings as may be required ... to protect and promote public health, safety and the proper conduct of racing and parimutuel wagering

---

3. A.R.S. § 5–108(A)(1) reads as follows:

"§ 5–108. Issuance of permit or license; grounds for refusal to issue; nontransferable; renewal

"A. The commission shall conduct a thorough investigation concerning the application for a permit or a license and:

1. May refuse to issue a permit or license to any applicant if there is substantial evidence to find that the applicant:

(a) Has been suspended or ruled off a recognized course in another jurisdiction by the racing board or commission thereof.

(b) Is not of good repute and moral character.

(c) Has, when previously licensed or granted a permit, violated the racing laws of this state or of any other state or the regulations of the commission.

(d) Is a corporation, firm or association not duly qualified and authorized to conduct business within this state.

(e) If an individual has been convicted of a felony or any crime involving moral turpitude, or, if a corporation, firm or association is controlled or operated directly or indirectly by a person or persons who have been convicted of a felony or any crime involving moral turpitude.

(f) If an individual is engaged in or has been convicted of wagering by other than the mutuel method or in pool selling or bookmaking in any state of the United States or foreign country where such other method, pool selling or bookmaking is illegal, or if a corporation, firm or association is controlled or operated directly or indirectly by a person who is engaged in or has been convicted of wagering by other than the mutuel method or in pool selling or bookmaking in any state of the United States or foreign country where such other method, pool selling or bookmaking is illegal.

(g) Has wilfully violated any provision of this chapter or any of the rules and regulations of the commission.

(h) Should not, in the best interest of the safety, welfare, economy, health and peace of the people of the state, be granted a permit.

(i) Enters into any contract or contracts which will not further the best interests of racing or be in the public interest. This provision shall not apply to any contract submitted prior to the effective date of this section."

and any other matter pertaining to the proper conduct of racing within this state." Pursuant to this statutory mandate the Commission has promulgated its regulation A.C.R.R. R3–27–104(X), which requires each permittee to maintain the track area in a neat, clean and safe condition. If a permittee does not comply with this requirement, the regulation authorizes state stewards to employ people and equipment in order to secure compliance, and charge the maintenance expense against the permittee, with no future permit to be issued until the expenses are reimbursed.

If the Commission had entered an order pursuant to this regulation finding that the racing facilities were not being adequately maintained during Arizona Downs' racing meets and further requiring that adequate remedial measures be taken to protect the safety, welfare, health and economic interests of the people of the state, we would not hesitate to uphold the Commission's order as being clearly within its statutory and regulatory authority and a valid exercise of its discretion. However, the Commission's decision does not purport to require that the racing facilities be adequately maintained during Arizona Downs' racing meet. Nor does the Commission's decision purport to be directed to any past or threatened future violation of its maintenance regulations. In fact, from the record it does not appear that the facilities have ever been inadequately maintained. Rather, the Commission's decision requires that Arizona Downs pay to Turf Paradise a proportionate share of the annual maintenance expense, covering periods when Turf Paradise is entitled to the exclusive use of the premises. In addition the decision completely ignores the property and concomitant rights granted to Arizona Downs by Turf Paradise under the 1956 agreement between them. From a review of the record it is apparent that the focus of the Commission's action has not been concerned with any failure of Arizona Downs to adequately maintain the facilities. Rath-

er, the focus of the Commission's action has been its concern relating to the comparative financial conditions of Turf Paradise and Arizona Downs, and the perceived inequity which might result if Arizona Downs is allowed to continue to receive the benefits flowing from its property rights in the Turf Paradise racing facilities.

■ Turf Paradise contends that the Commission rightfully ignored Arizona Downs' property rights as created by the 1956 agreement and urges that Arizona Downs could not by contract deprive the Commission of its power to regulate matters appropriately within the Commission's jurisdiction. *See, e.g., Hudson County Water Co. v. McCarter,* 209 U.S. 349, 28 S.Ct. 529, 52 L.Ed. 828 (1908). We agree that a party may not, by contract, deprive a regulatory body of its authority to regulate matters within its jurisdiction, and, if the facilities here involved were not being adequately maintained during Arizona Downs' racing meets, in our opinion Arizona Downs would not be allowed to rely upon its contract with some other party (Turf Paradise) as a defense to a Commission decision requiring that adequate maintenance be performed. Under such circumstances, Arizona Downs would be required to have the necessary maintenance performed, and then rely upon a civil action for enforcement of any right to damages which it might have against some other party for breach of its maintenance contract. However, such facts have not been presented in the record before the Commission in this case. Arizona Downs has not asserted its property rights under the 1956 agreement in an attempt to restrict the exercise by the Commission of its valid statutory powers. Rather, the assertion of those rights has been advanced in response to an unauthorized attempt by the Commission and Turf Paradise to require Arizona Downs to assume in favor of Turf Paradise obligations far exceeding those established by the 1956 agreement between the parties.[4] It is one thing to hold that the

---

4. In its "Findings of Fact", the Commission found:

"The applicants [Turf Paradise and Arizona Downs] have not been able to reach agree-

Commission has authority to require that racing facilities be adequately maintained so as to protect the public during a permittee's racing meet, and quite another to hold that the Commission's authority includes the power to, in effect, invalidate property and other contractual rights of the permittee, for the purpose of bestowing benefits upon another party to the detriment of the permittee.

■ As a final argument on the maintenance issue, Turf Paradise seeks to uphold the authority of the Commission to enter its decision relating to maintenance on the theory that the state itself has an economic interest in the Turf Paradise racing facility because state funds have been used for capital improvements at that facility. A.R.S. § 5–111.02 allows a permittee to use part of the state's portion of the pari-mutuel receipts for the construction of approved capital improvements at the racing facility.[5] In considering this contention, we first note that the Commission which under this theory would be charged with protecting the state's "interest" in the facility has not appealed from the trial court's reversal of the maintenance order. Additionally, and assuming the abstract validity of Turf Paradise's contention concerning the state's § 5–111.02 interest in seeing that the facilities are properly maintained, we again note the absence of a factual predicate for the exercise of any authority which the Commission might have in that regard.

For the foregoing reasons, we hold that upon the record presented the Commission lacked authority to enter the decision relating to maintenance as it affects Arizona Downs, and accordingly we affirm that portion of the trial court's judgment which held such provision invalid.

The other issue raised on appeal by Turf Paradise relates to the trial court's ruling that the Commission could not dictate to permittees which particular racing officials they would employ, so long as such employed officials were qualified under the applicable rules and statutes.[6] Turf Paradise does not point to any statutory provisions which would authorize the Commission to dictate to a racing permittee that it enter into an employment contract with a specified individual as a racing official, and we have found no such authority. Turf Paradise contends however, that the trial court should not have decided this issue. Turf Paradise urges that any judicial resolution of this issue should not occur until such time as the Commission attempts to enforce its decision which directed that the permittees agree on the hiring of racing officials. In this connection we note that the Commission's decision specified that if the permittees could not agree upon racing officials within 15 days from the date of the decision, the Commission would resolve the dispute.

The first prong of Turf Paradise's contention rests on the concept of "ripeness" for review. The ripeness doctrine arises from a reluctance of the courts to become involved in the resolution of questions of a hypothetical or abstract nature. To that extent the doctrine is closely related to and, to a large extent, has evolved from the federal constitutional "case or controversy" requirement. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937). As applied in the context of administrative review, it has been stated that the basic rationale of the ripeness doctrine is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagree-

---

ment as to the responsibilities that each should bear for year-round maintenance of the racetrack and grounds at Turf Paradise." Unless the 1956 agreement is held invalid, this finding is obviously erroneous.

5. In its answering brief, Arizona Downs asserts that in the two years since A.R.S. § 5–111.02 had been in effect prior to the 1980 Commission hearing, Arizona Downs paid to Turf Paradise approximately $611,000 from funds generated

pursuant to A.R.S. § 5–111.02, as reimbursements for capital expenditures made by Turf Paradise.

6. Again, we note that the Commission has not appealed from the trial court's ruling on this issue. We also have some concern as to whether Turf Paradise is a party aggrieved by this ruling by the trial court.

ments over administrative policies and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

Turf Paradise urges that by the time of the superior court hearing in this matter it was evident that the permittees had not in fact agreed on the selection of racing officials, but, nevertheless the Commission had not taken any steps to enforce its decision. Thus, Turf Paradise urges that the employment issue was not "ripe" for presentation to the court, and accordingly that the court should not interfere unless and until the Commission takes affirmative steps leading towards an attempt at enforcement of its decision. We do not agree.

[5] The ripeness doctrine has been utilized in many instances to justify non-intervention by the courts when the complained of administrative action has not become final because of failure to exhaust appropriate administrative remedies, *see, e.g., Hinz v. City of Phoenix,* 118 Ariz. 161, 575 P.2d 360 (App.1978); *Stephens v. Industrial Commission of Arizona,* 114 Ariz. 92, 559 P.2d 212 (App.1977). Likewise, the ripeness doctrine is often applied in cases involving attacks on *general* orders, rules and regulations of an administrative agency,[7] *see, e.g., Amerada Petroleum Corp. v. Federal Power Commission,* 231 F.2d 461 (10th Cir.1956); *Insurance Co. of North America v. Commonwealth of Pennsylvania, Ins. Dept.,* 327 A.2d 411, 15 Pa. Cmwlth. 462 (1974). However, such circumstances were not presented in the proceeding before the trial court in this case. Here, there was nothing abstract or general concerning the Commission's directive concerning the employment of racing officials. It was not a general order or regula-

tion. It was part of a decision directed only to these specific parties and issued only after an adversarial hearing before the Commission.[8] Arizona Downs exhausted its administrative remedies and was required to timely appeal to the superior court in order to prevent the Commission's decision from becoming binding and conclusive. Under these circumstances, we hold that the doctrine of ripeness has no application.

Turf Paradise also urges that, in any event, because of the passage of time and the failure of the Commission to attempt enforcement, the employment issue has become moot, since the decision related to the 1980–81 racing season only. In its response, Arizona Downs urges that the Commission has indicated its intention to continue to insist upon continuity of racing officials, and that, in fact, the same issue was again raised in proceedings relating to the 1981–82 racing season.

While generally this court should not concern itself with moot issues, there are exceptions to the mootness doctrine. *J.R. Francis Construction Co. v. Pima County,* 1 Ariz.App. 429, 403 P.2d 934 (1965); *In re Establish Inspection of the Metal Bank of America, Inc.,* 700 F.2d 910 (3rd Cir.1983). One of the more common exceptions applies where the issue is "capable of repetition, yet evading review." *See Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147, 161 (1973); *Odle v. Imperial Ice Cream Co.,* 11 Ariz.App. 203, 463 P.2d 98 (1970); *Quimby v. School District No. 21 of Pinal County,* 10 Ariz. App. 69, 455 P.2d 1019 (1969). We are persuaded that the exception applies to the employment issue in this case, and therefore proceed to determine the issue on its merits.

---

7. *But see* A.R.S. § 41–1007, which provides that "any person who is or may be affected" by a rule enacted by an agency may obtain declaratory relief concerning the validity of the rule.

8. *Independent Gasoline Marketers Council v. Department of Energy,* 511 F.Supp. 595 (D.D.C. 1981), which is heavily relied upon by Turf

Paradise on the ripeness issue, is readily distinguishable, since it involved only general regulations, not a decision directed at specific parties. Furthermore, the general regulations were enacted on a "standby" basis, and thus had not even been placed in force and effect.

■ While the Commission is given broad authority to establish by regulation standards for the licensing or qualifying of various individuals participating in racing meetings[9] there are no statutory provisions which could arguably support an extension of the Commission's authority so as to authorize the Commission to require the employment by a permittee of specified racing officials. In the absence of statutory authority, we affirm the trial court's ruling on this issue.

## THE ARIZONA DOWNS CROSS-APPEAL

Arizona Downs has cross-appealed from that portion of the trial court's judgment which affirmed the Commission's allocation of racing dates for the 1980–81 racing season between Arizona Downs and Arizona Horsemen's Foundation. Since there was no conflict in the superior court between Arizona Downs and Turf Paradise concerning racing dates allocated to Turf Paradise, the issues raised on the cross-appeal do not directly involve Turf Paradise as a party, although its interests are indirectly involved because of issues raised in the cross-appeal relating to statutory interpretation and the rights of Arizona Downs pursuant to the 1956 lease agreement between Arizona Downs and Turf Paradise.

In affirming the Commission's allocation of racing days to Arizona Horsemen's Foundation, the trial court refused to accept Arizona Downs' contention that Arizona Downs was entitled to all of the racing days involved, and that the Commission's decision violated the racing date preference provisions of A.R.S. § 5-110(A). The trial court noted that the preference provisions of § 5-110(A) had been held unconstitutional in a prior action involving these same parties, Maricopa County Cause No. C-371759. Accordingly, applying *res judicata* principles, the trial court precluded Arizona Downs from re-litigating the constitutionality of that statute. Before this appeal was filed, the Arizona Supreme Court

in a special action proceeding brought by Arizona Downs, held that the trial court correctly precluded the relitigation of the statute's constitutionality by Arizona Downs in this action. *See Arizona Downs v. Superior Court of Arizona, Maricopa County*, 128 Ariz. 73, 623 P.2d 1229 (1981). However, it is important to note that in its decision in the cited special action proceeding, the Arizona Supreme Court did not purport to rule on the merits of the questions raised concerning the constitutionality of the preference statute.

■ In their answering briefs filed in the cross-appeal, Turf Paradise, the Racing Commission and Arizona Horsemen's Foundation all contend that the issues raised in Arizona Downs' cross-appeal are now moot. Anticipating this argument by the cross-appellees, Arizona Downs in its opening brief recognized that all of the racing days scheduled for Arizona Downs, Arizona Horsemen's Foundation and Turf Paradise for the 1980–81 season had come and gone, and no action by this court could restore to Arizona Downs the opportunity to conduct a "full" racing meeting for that season. Nevertheless, relying upon recognized exceptions to the mootness doctrine,[10] Arizona Downs urged in its brief that underlying issues in the cross-appeal remained of vital importance to continuing relationships between the parties, and that therefore we should give full consideration to its cross-appeal.

In view of the arguments made by the cross-appellees in their briefs, and particularly in view of events which have occurred subsequent to the filing of the briefs in this appeal, we have decided that further consideration of the issues raised in the cross-appeal is not merited and that the cross-appeal should now be dismissed as moot.

On the mootness issue, Arizona Downs states that "the primary reason for the continued vitality of many of the issues raised in [the cross-appeal] is the pendency of the resolution of the constitutionality of

9. *See generally* A.R.S. §§ 5-104, 5-107.01, 5-107.02 and 5-108.

10. *See Abbott Laboratories v. Gardner, supra.*

A.R.S. § 5–110.A." While this appeal was pending, the Arizona Supreme Court issued its opinion in *Arizona Downs v. Arizona Horsemen's Foundation*, 130 Ariz. 550, 637 P.2d 1053 (1981). In that opinion the Arizona Supreme Court reversed the judgment entered by the trial court in Maricopa County Cause No. C–371759, and upheld the validity of Arizona's racing preference statute, A.R.S. § 5–110(A), against various constitutional attacks urged by Turf Paradise, Arizona Horsemen's Foundation and the State of Arizona. Additionally, the Arizona Supreme Court likewise held that the 1956 lease agreement was valid and did not violate Arizona's antitrust statutes (A.R.S. § 44–1401 et seq.). Subsequently, the 1956 lease agreement was also upheld against attacks made by Turf Paradise pursuant to the antitrust provisions of the Sherman Act. *See Turf Paradise, Inc. v. Arizona Downs*, 670 F.2d 813 (9th Cir.1982), *cert. denied*, 456 U.S. 1011, 102 S.Ct. 2308, 73 L.Ed.2d 1308 (1982). In view of these decisions, in the words of Arizona Downs, "the primary reason for the continued vitality" of the cross-appeal has disappeared.

Another development which in our opinion contributes to the mootness of Arizona Downs' cross-appeal is the fact that the party primarily involved as a cross-appellee, Arizona Horsemen's Foundation, is now defunct and no longer interested in this appeal.[11] We likewise discount Arizona Downs' expression of concern that the allocation of 30 racing days to Arizona Horsemen's Foundation for the 1980–81 season might have some detrimental effect on Arizona Downs' future rights under the racing preference statute. During oral argument we were advised by counsel for the state that Arizona Horsemen's Foundation has not been involved in proceedings before the Commission subsequent to the 1981–82 racing season, and that racing days for the 1982–83 racing season were equally allocated to Arizona Downs and Turf Paradise. Under these circumstances we can perceive no possible future detrimental effect to Ar-

izona Downs resulting from the 1980–81 allocation of racing days to Arizona Horsemen's Foundation.

For the foregoing reasons we hold that the issues raised in Arizona Downs' cross-appeal are moot, and that accordingly the cross-appeal must be dismissed. However, we will comment briefly concerning one issue raised by Arizona Downs both in its cross-appeal and in support of the action taken by the superior court in reversing the Commission's maintenance order. Arizona Downs has forcefully urged that the record before the Commission shows that the Commission's decision was the result of irregularities in the proceedings and bias and prejudice on the Commission's part, evincing a predisposition in favor of Turf Paradise and against Arizona Downs. We would be remiss in our duties as a reviewing court were we not to observe that an objective reading of the record discloses a substantial basis for Arizona Downs' assertion of this issue. However, in view of the fact that we have resolved the appeal on other grounds urged by Arizona Downs, we need not decide whether this issue alone would have been of sufficient merit to justify setting aside the Commission's decision.

The judgment entered by the trial court is affirmed. The cross-appeal is dismissed as moot.

EUBANK and MEYERSON, JJ., concur.

11. Prior to oral argument, counsel for Arizona Horsemen's Foundation filed a document with this court stating that it waived "any rights it may have pertaining to such participation [in oral argument] or further processing of this case."