**DIAMOND SHAMROCK CORPORA-
TION et al., Appellants,**

v.

**Douglas M. COSTLE, Administrator, Environmental Protection Agency, et al.**

**No. 77–1111.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 24, 1978.

Decided May 30, 1978.

Charles F. Lettow, Washington, D. C., with whom Robert C. Barnard and Edward G. Modell, Washington, D. C., were on the brief, for appellants.

Glen R. Goodsell, Atty., Dept. of Justice, Washington, D. C., with whom Peter R. Taft, Asst. Atty. Gen., Raymond N. Zagone, Jacques R. Gelin, Donald W. Fowler, Attys., Dept. of Justice, G. William Frich, Gen. Counsel, Environmental Protection Agency and Ridgeway M. Hall, Jr., Associate Gen. Counsel, Environmental Protection Agency, Washington, D. C., were on the brief for appellees. Also Bruce M. Diamond, Atty., Environmental Protection Agency, Washington, D. C., entered an appearance for appellees. Also Edmund B. Clark, Atty., Dept. of Justice, Washington, D. C., entered an appearance for appellees.

Before ROBINSON, ROBB and WIL-KEY, Circuit Judges.

Opinion for the Court filed by ROBB, Circuit Judge. .

ROBB, Circuit Judge:

Several chemical manufacturers appeal from an order of the District Court dismissing their complaint on the ground that the controversy was not ripe. In their complaint appellants sought review of the Net-Gross Adjustment Regulations promulgated

by the Environmental Protection Agency (EPA) on July 16, 1975. 40 C.F.R. §§ 125.-24(c), 125.28. Because the effects of these regulations have not been felt in a concrete way by the appellants, *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), we affirm.

The regulations were promulgated pursuant to the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* Section 301 of the 1972 Amendments to that Act, P.L. 92–500, requires that the discharge of any pollutants into navigable waters be in compliance with a permit issued pursuant to section 402 of the Amendments. A permit specifies, in turn, the effluent limitations to which a permittee must adhere when discharging wastewater. The regulations in question here provide that when issuing permits, the regional administrators of the EPA shall express effluent limitations in gross terms. 40 C.F.R. § 125.24(c). Thus, under the regulations a permittee is given no credits for pollutants already present in its intake water; in contrast, appellants contend that the effluent limitations must be expressed in net terms so that a permittee will not be accountable for pollutants existing in the water that it takes in. The regulations provide two exceptions to the requirement that effluent limitations be expressed in gross terms. One exception occurs when an effluent limitation is stated in the regulations to be applicable on a "net basis". 40 C.F.R. § 125.28(a)(1). The other applies when an applicant for a permit demonstrates that the wastewater treatment systems which are designed to reduce to the required level the pollutants added by the applicant cannot remove the specific pollutants present in the applicant's intake water. *Id.* at (a)(2). The regulations pertain only to permits to be issued after their effective date and are inapplicable to permits issued by state authorities. 25 C.F.R. § 125.2(b).

Appellants alleged in their complaint that the Administrator exceeded his authority in promulgating the regulations, that they were unsupported by substantial evidence or adequate findings and were vague and ambiguous. To establish their factual allegations, appellants moved in the District Court for an order requiring the EPA to certify and file with the court the administrative record compiled in adopting the regulations. The court denied appellants' motion and granted the Administrator's motion to dismiss. The court ruled that the matter would not be ripe until the regulations were applied in a permit proceeding. We are in agreement with that ruling and accordingly affirm.

▮▮▮ The objective underlying the ripeness doctrine is well recognized:

> the ripeness doctrine['s] . . . basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*Abbott Laboratories, supra,* 387 U.S. at 148–49, 87 S.Ct. at 1515. The methodology for determining whether a controversy is ripe for review is established: "The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories, supra,* 387 U.S. at 149, 87 S.Ct. at 1515 (1967); *Continental Air Lines, Inc. v. Civil Aeronautics Board,* 173 U.S.App.D.C. 1, 18, 522 F.2d 107, 124 (1974) (*en banc*); *New York Stock Exchange, Inc. v. Bloom,* 183 U.S.App.D.C. 217, 221, 562 F.2d 736, 740 (1977). Therefore, for a case to be ripe for review, "[w]hat is required is that the interests of the court and agency in postponing review until the question arises in some more concrete and final form, be outweighed by the interest of those who seek relief from the challenged action's 'immediate and practical impact' upon them." *Continental Air Lines, supra,* 173 U.S.App.D.C. at 18–19, 522 F.2d at 124–25; *New York Stock Exchange, supra,* 183 U.S.App.D.C. at 221–22, 562 F.2d at 740–41.

■ Here the appellants have not shown that the regulations have had an "immediate and practical" impact on them. Their assertion of hardship is merely that once permits are issued to them pursuant to the net/gross regulations, they will have to make substantial modifications in their wastewater treatment systems. (Brief for Appellants at p. 21) Appellants do not allege however that presently—before such permits are issued—they must begin to make such modifications. Moreover, appellants acknowledge that once the regulations are applied in a permit proceeding, judicial review will be available under section 509(b)(1)(F), 33 U.S.C. § 1369(b)(1)(F). See American Iron & Steel Institute v. Environmental Protection Agency, 543 F.2d 521, 529 (3d Cir. 1976).

■ Appellants contend in their brief that the regulations "now operate to control [their] business affairs" and to place them in an "acute dilemma" because of the stringent deadlines the Act imposes for achieving compliance with permits and the lead-times needed to design and construct conforming treatment facilities.[1] Id. at p. 22. Yet, appellants have failed to substantiate this bare assertion either in their briefs or at oral argument. They have not, for example, alleged that design or construction must commence before a permit issues or that they could not meet the deadlines. Indeed, at argument this court repeatedly pressed counsel for appellants to state what effect the regulations now have on their clients, but counsel's only response was that they "know it's going to come."

This case is therefore unlike those in which courts have granted review because private parties are confronted with a painful choice between immediate compliance with an agency's policy, at great expense, and the risk of serious penalties should their challenge in a later proceeding be unsuccessful. E. g., Abbott Laboratories, supra, 387 U.S. at 152–53, 87 S.Ct. 1507; Continental Air Lines, supra, 173 U.S.App. D.C. at 20–22, 522 F.2d at 126–28. Appellants contend, however, that the Supreme Court's holding in Columbia Broadcasting System, Inc. v. United States, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942), controls here and requires a decision in their favor. We disagree. The Court in its opinion in that case stressed the damaging consequences of the FCC's regulations on CBS before their application in an enforcement proceeding. Id. at 417–20, 422–25, 62 S.Ct. 1194, see also id. at 410–14, 62 S.Ct. 1194. Indeed, the impact alleged there—that affiliates were repudiating their contracts with CBS or refusing to enter into new ones because of the regulations—was being felt even though no enforcement proceeding was alleged to be imminent. In contrast, appellants have failed here to point to any present damaging effect from the EPA's regulations.

■ It is against this lack of any showing of hardship that we evaluate and compare the interests of the agency and the courts in postponing review until the issue is presented in a more concrete and final

---

1. To the extent this vague assertion may mean that the net/gross regulations have influenced the capital planning of appellants, causing them to set aside funds for possible future expenditures, we agree with the Seventh Circuit in Bethlehem Steel Corp. v. Environmental Protection Agency, 536 F.2d 156, 162–63 (1976). The court explained there:

> The steel and power companies' claims of uncertainty in their business and capital planning are not sufficient to warrant our review of an ongoing administrative process. First, the claims are vague and speculative. They do not involve injuries on the order of the concrete immediate business costs which the Supreme Court relied on to find a pre-enforcement challenge to administrative action

ripe for review in Abbott Laboratories, supra, and Gardner v. Toilet Goods Association, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967). In those cases the petitioners were faced with the dilemma of either expending considerable sums of money to comply with the administrative orders affecting them or facing serious penalties for noncompliance accompanied by the stigma of transgressing the law which could affect their goodwill. The petitioners in the instant case are not faced with such a dilemma. They need not expend any funds at this time since there is no administrative directive to which they must comply, nor, of course, do they face any sanctions for non-compliance.

form. We note at the outset of this analysis that in the absence of hardship only a minimum showing of countervailing judicial or administrative interest is needed, if any, to tip the balance against review. *See Continental Air Lines, supra,* 173 U.S.App.D.C. at 18–19, 522 F.2d at 124–25; *New York Stock Exchange, supra,* 183 U.S.App.D.C. at 221–22, 562 F.2d at 740–41. Although appellants' challenges to the regulations can be considered as raising issues which are for the most part "legal", that characterization does not end the inquiry.[2] *See Toilet Goods Ass'n v. Gardner,* 387 U.S. 158, 162, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967); *Bethlehem Steel Corp. v. Environmental Protection Agency,* 536 F.2d 156, 161 (7th Cir. 1976). In this case we believe that the administrative process will benefit from our withholding review. Although the regulations were promulgated after informal rulemaking and thus the order adopting them may be considered sufficiently final to permit review, the Administrator is not barred from changing his policy as experience in applying the regulations is gained. Moreover, the regulations appear merely to be an interpretation of how the earlier promulgated effluent limitations are to be applied. The impact of the regulations will depend in part upon their interpretation by the EPA's regional administrators, as well as upon the effect of the two exceptions. Accordingly, we are unwilling to disrupt this administrative process when "no irremediable adverse consequences flow from requiring a later challenge to this regulation." *Toilet Goods, supra,* 337 U.S. at 164, 87 S.Ct. at 1525; *Bethlehem Steel, supra,* 536 F.2d at 161.

■ The interest of the courts will also be furthered by withholding review. Judicial review is generally facilitated by waiting until administrative policy is implemented for then a court can be freed, at least in part, from theorizing about how a rule will be applied and what its effect will be. This principle seems especially apt in this case where the effect of the regulations is derivative; unlike many regulations which prescribe the conduct required of a party, these regulations—requiring that effluent limitations be expressed in gross terms—specify no standards until applied to particular effluent limitations. Therefore, rather than speculate about the consequences the regulations will have, we believe it more appropriate in the absence of hardship to the appellants to wait until the regulations are applied and their consequences realized.

The Circuit Court of Appeals for the Third Circuit, in declining to review these regulations before they had been applied, has expressed its similar concern:

> By contrast, if, as we are urged by petitioners, we were to consider the Net-Gross Regulations at this stage, we would face two equally unattractive alternatives. On the one hand, we would be obliged to review the regulations in a vacuum, *i. e.,* without specific effluent limitations in issue and without the factual context and record of a permit proceeding. On the other hand, we would be required to consider the effect of these regulations upon effluent limitations for all 27 point source categories (*i. e.,* grain mills, 40 C.F.R. § 406; canned and preserved fruits and vegetables processing, 40 C.F.R. § 407; canned and preserved seafood processing, 40 C.F.R. § 408; etc.) and their impact upon all the possible factual situations which could develop. We decline petitioners' invitation to review under such circumstances.

*American Iron & Steel Institute v. Environmental Protection Agency,* 543 F.2d 521, 528 (1976).

---

**2.** Appellants seek to bolster their argument that the issues are presently fit for review by contending that if we postpone review until after a permit proceeding, review will occur on an inadequate record because the Administrator's rulemaking record will be unavailable. We have been assured however by counsel for the EPA that if the regulations are challenged in a permit proceeding, the rulemaking record will be before the Administrator on administrative appeal and ultimately before us if appeal is taken from the Administrator's action; and this position is clearly sound.

## CONCLUSION

Determination of ripeness is, as we have said, a commonsense judgment. *Continental Air Lines, supra,* 173 U.S.App.D.C. at 18, 522 F.2d at 124. Here, we believe, practicalities demand that judicial review be withheld; postponing review will impose no hardship on appellants and it will enhance the administrative process and assist judicial review. Accordingly, we affirm the District Court's dismissal. Once the regulations have been applied, administrative review will then be available.