INDEPENDENT GASOLINE MARKET-
ERS COUNCIL, Plaintiff,

v.

DEPARTMENT OF ENERGY et
al., Defendants.

Civ. A. No. 79–0497.

United States District Court,
District of Columbia.

April 9, 1981.

Jack A. Blum, Edward G. Modell, Blum & Nash, Washington, D. C., for plaintiff.

Paul G. Wallach, Alexander P. Humphrey IV, Ted P. Gerarden, Dept. of Energy, Washington, D. C., for defendants.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

This case involves the propriety of certain standby regulations promulgated by the Administrator of the Economic Regulatory Administration (ERA), an agency within the Department of Energy (DOE). Those regulations, adopted January 18, 1979, were added to the Mandatory Petroleum Allocation and Price Regulations, 10 C.F.R. Parts 210–212, and appear as 10 C.F.R. §§ 210–1, 211–1 (as amended, 45 Fed.Reg. 55378, Aug. 19, 1980), and 212–1 (hereinafter referred to as the "Special Rules"). The ERA instituted the Special Rules in standby status, meaning that although promulgated officially in final form, they are presently inactive and without force or effect.

The regulations, which set standby price and allocation rules for petroleum, could be utilized in various scenarios, including "a significant national or regional crude oil or refined product shortage, or a widespread pattern of inequitable prices...." 44 Fed. Reg. 3928 (Jan. 18, 1979). Generally, the Special Rules give the Administrator of the ERA (the Administrator) authority to up-date the Mandatory Petroleum Price and Allocation Regulations to a more current basis, to alter the scheme which determines the regional allocation of petroleum, and to regulate the allocation of "kerosene-base jet fuel, middle distillates, and residual fuel oil" with respect to certain categories of purchasers. *Id.* at 3928–9.

The Administrator can activate the Special Rules whenever he determines, in his discretion, that they would ease shortages of fuel regionally or nationwide, or that they would alleviate any other danger to the nation's energy usage. The rules are designed to be flexible, giving the Administrator wide latitude in the manner of implementation. The supplementary information to the rules states,

> For instance, the Administrator might act quite differently in addressing a supply interruption of a known, limited duration (resulting, for example, from a single act of sabotage) than in addressing a situation where suppliers of a particular product, such as unleaded gasoline, become short and prices rise to inequitable levels.

*Id.* at 3929. The Special Rules can also be activated automatically, unless the Secretary of Energy determines otherwise, when the crude oil allocation provisions of the International Energy Agreement take effect, giving rise to concerted action by member nations to ensure equitable petroleum allocation in the event of a major, global interruption of supply.

The Special Rules have been implemented only once. On February 28, 1979, the Administrator ordered Special Rule 211–1 partially activated to update the "base period" that determines certain supplier-purchaser relationships pursuant to 10 C.F.R. § 211.-102. The base period was changed from 1972 to 1977 to facilitate fairer distribution of petroleum products. *See* 44 Fed.Reg. 11202 (Feb. 28, 1979). An interim rule superseded this activation on May 1, 1979 and a final rule, amending 10 C.F.R. § 211.102, codified the updated base period on September 1, 1979. 44 Fed.Reg. 42549 (July 19, 1979). Except for that single temporary

activation of Rule 211–1, the Special Rules have remained inactive.

Plaintiff Independent Gasoline Marketers Council (IGMC) is a trade association of gasoline station operators not associated with major oil companies. On behalf of its members, IGMC has brought this suit challenging the Special Rules as unconstitutional, in that they deprive plaintiff's members of property without due process, and as illegal because of improper rulemaking procedure and because they are beyond the authority given the Department of Energy in the Emergency Petroleum Allocation Act, 15 U.S.C. § 751 et seq. Plaintiff also sought review of the Special Rules in the Court of Appeals for this Circuit,[1] but that action is stayed pending the outcome of the case in this Court.

The defendants, the Department of Energy (DOE) and other officials have moved to dismiss the action, and alternatively, for summary judgment. In response to this motion for summary judgment, plaintiff avers that it has been unable to obtain discovery and therefore cannot allege the existence of material factual issues; thus, plaintiff asks the Court for an order directing the defendants to permit the plaintiff to seek discovery. After an examination of the relevant memoranda of points and authorities and the record in the case, it appears that plaintiff has not alleged such substantial constitutional violations as would warrant certification to the Temporary Emergency Court of Appeals, and that the case is not ripe for judicial review, presenting no case or controversy as to any of the challenged administrative actions. Therefore, the case will be dismissed for lack of a justiciable dispute.

At the outset, it is necessary to determine the exact substance of the plaintiff's challenge. IGMC filed this suit on February 13, 1979, challenging the Special Rules on constitutional and statutory grounds. The rules were then inactive. On February 22, 1979, Activation Order No. 1 was issued. The essence of that Order was that the base period used to determine the allocation of

gasoline for use in motor vehicles was updated from 1972 to 1977–78. Activation Order No. 1 was revoked when the Department promulgated an interim rule, pursuant to apparently appropriate procedures, that instituted the new, updated basis in formal regulatory terms, and not in terms of the standby activation order. Plaintiff amended its complaint on April 24, 1979, during the time Special Rule No. 1 was in effect. However, nowhere in the complaint did IGMC allege that it or any of its members was injured by the activation order imposed in February under the Special Rules. In fact, the activation order was not even mentioned in the amended complaint. The activation order expired by its own terms May 31, 1979.

█ IGMC's challenge to Activation Order No. 1 fails on two independent grounds, because it has not complained of any injury resulting from the Activation Order and because its challenge to the Order is moot. Plaintiff's only mention of Activation Order No. 1 and the injury alleged to have resulted therefrom is in its reply to the defendants' motion for dismissal. Where the plaintiff does not allege a wrong from an administrative action, even liberal theories of pleading do not permit the Court to substitute for the plaintiff's allegations its own view of what the plaintiff should be challenging. In addition, there is a substantial question as to whether the IGMC has suffered any wrong resulting from Activation Order No. 1.

Plaintiff's complaint concerning Activation Order No. 1 is also moot and fits no recognized exception to the mootness doctrine. The activation of Special Rule No. 1 ended May 31, 1979 and does not now affect plaintiff's legal rights or obligations in any way. Federal courts are without power to decide moot or abstract questions. *Amalgamated Ass'n of R.R., etc. Employees v. Wisconsin Employment Board,* 340 U.S. 416, 71 S.Ct. 373, 95 L.Ed. 389 (1951). This conclusion is not affected by the fact that this case seeks declaratory relief. *Poe v.*

---

1. No. 80–1177 (D.C.Cir., filed Feb. 13, 1979).

*Ullman,* 367 U.S. 497, 506, 81 S.Ct. 1752, 1757, 6 L.Ed.2d 989 (1961).

This challenge does not fall under the exception to the mootness doctrine outlined in *Southern Pacific Terminal Co. v. Interstate Commerce Commission,* 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911), which allows review of technically moot challenges when the order is "capable of repetition, yet evading review." *Id.* at 515, 31 S.Ct. at 283. Plaintiff has not alleged that the order embodied in Activation Order No. 1 will ever be repeated, and in fact, since that order has now been revoked in place of an administrative regulation, repetition is impossible. This is not a case like *Nader v. Volpe,* 475 F.2d 916 (D.C.Cir.1973), where the plaintiff challenged exemptions from automobile safety standards granted by the Secretary of Transportation under a single statutory provision. Because the exemptions were temporary and discretionary, they could be withdrawn prior to a court considering whether the defendant had authority to issue them. The Secretary also asserted his intention to issue identical orders in the future. Thus, the Court rejected the claim that the dispute was moot. In this dispute, not only will Activation Order No. 1 not be repeated, but there is no allegation that circumstances will prevent judicial review. *See Weinstein v. Bradford,* 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975). "A mere speculative possibility of repetition is not sufficient." *Williams v. Alioto,* 549 F.2d 136, 143 (9th Cir. 1977). Thus, on either of two grounds, the failure of plaintiff to allege injury from Activation Order No. 1, or the mootness of any challenge by IGMC of that particular order, the case is properly limited to plaintiff's allegations as to the legality of the Special Rules, apart from their activation in February, 1979.

■ The plaintiff has challenged the Special Rules on constitutional grounds, claiming that they work an unconstitutional deprivation of property in violation of the Fifth Amendment and that they violate due process because the Administrator can invoke the Special Rules without notice. If the Court deems these claims substantial constitutional issues, then proper jurisdiction lies in the Temporary Emergency Court of Appeals. 15 U.S.C. § 754(a)(1), *incorporating* § 211(c) of the Economic Stabilization Act, *see* 12 U.S.C. § 1904 (Note). The Temporary Emergency Court of Appeals will have jurisdiction over these claims if they are not plainly without merit or foreclosed by precedent of the Supreme Court or the Temporary Emergency Court of Appeals. See *Delaware Valley Apartment House Owners Association v. United States,* 350 F.Supp. 1144, 1150 (E.D.Pa.1972), *aff'd* 482 F.2d 1400 (Temp.Emer.Ct.App.1973).

■ Unless government regulations constitute a direct appropriation of an individual's property, they are not deemed unconstitutional deprivations of property, in violation of due process. IGMC has alleged no recognizable property interest because it was not shown that any of its, or its member companies' property has been taken directly. The Special Rules appear to be lawful regulations in pursuit of legitimate governmental interests, and plaintiff's claim of consequential injuries falls short of characterizing the defendants' conduct as violative of the Fifth Amendment. *See Bowles v. Willingham,* 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1944); *Condor Operating Co. v. Sawhill,* 514 F.2d 351, 361 (Em.App.), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1975, 44 L.Ed.2d 467 (1977).

■ Plaintiff's complaint that the Special Rules violate due process because they can be activated without notice is likewise without merit. It is well settled that, in emergency situations concerning the pricing and allocation of petroleum, notice and an opportunity to comment are not required. The procedural requirements of the Administrative Procedure Act can be dispensed with under emergency conditions. *See Tasty Baking Co. v. Cost of Living Council,* 529 F.2d 1005, 1014–1015 (Temp.Emer.Ct. App.1975); *Nader v. Sawhill,* 514 F.2d 1064, 1068 (Temp.Emer.Ct.App.1975). Certification to the Temporary Emergency Court of Appeals is inappropriate in this dispute, as the constitutional claims are without merit

and contrary to applicable and established precedent.

The question now arises whether plaintiff's challenge to the legality of the Special Rules is justiciable. The leading case on the ripeness of a challenge to an administrative action is *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1966). There the Supreme Court considered a Department of Health, Education and Welfare regulation concerning drug labeling. In holding that the particular challenge in that case was ripe for review, the Court set forth a two-pronged analysis to be used in determining ripeness. The Court said, at 148–149, 87 S.Ct. at 1515,

> Without undertaking to survey the intricacies of the ripeness doctrine it is fair to say that its basic rationale is to prevent the courts through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. *The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.* (Emphasis supplied)

The Court analyzed the fitness factor as requiring an examination of whether the issues presented were purely legal and whether the agency's action was "final." 387 U.S. at 149–152, 87 S.Ct. at 1515–1517. It is the finality requirement that makes judicial review of the standby Special Rules inappropriate in the instant case.

■ Under the finality doctrine, a court will look beyond the issuing agency's characterization of the rule to examine the action for its practical consequences, attempting to determine what effect the rules have on the challenger. Generally, a rule is final for fitness purposes if the regulated entity who is seeking review of the rule must choose between complying with the rule it asserts to be illegal or facing penalties imposed by the agency in order to secure compliance. *See* B. Mezines, J. Stein & J. Gruff, *Administrative Law* § 48.03[1] (1980).

*Abbott Laboratories* provides an example of circumstances which do present a controversy ripe for review. Drug manufacturers challenged a regulation of the Food and Drug Administration requiring the generic name of a prescription drug, in addition to the manufacturer's brand name, to appear on all of the manufacturer's literature. The Court found that the manufacturers were faced with two alternatives: 1) to incur the substantial cost of complying with the rule they alleged to be illegal, with the possibility that after litigation the rule would be struck down, or 2) to ignore the rule but then face serious civil or criminal penalties for non-compliance. When this dilemma is presented to one under the regulation of an agency, the action is deemed final.

An instructive precedent is *Diamond Shamrock Corp. v. Costle,* 580 F.2d 670 (D.C.Cir.1978), where the Court of Appeals held that certain regulations of the Environmental Protection Agency (EPA) did not present a justiciable controversy because they were not final for fitness purposes. The regulations governed the method by which the allowable pollution levels for regulated industrial plants would be measured in EPA rules. Under the provisions of the challenged regulations the EPA would determine the amount of allowable discharge at the time it issued a permit for the particular plant.

Several chemical manufacturers brought suit, alleging a variety of violations of administrative procedure. The Court concluded that the challenge to the regulations was not ripe because no permit had been issued to any of the plaintiffs, and therefore no discharge limitation had been set. Thus, it was impossible to know what the eventual impact on the individual manufacturers would be prior to the permit issuance proceeding, and therefore the regulations fixed no specific legal obligations. Without the imposition of legal duties on the manufac-

turers, they could not complain that they faced a dilemma of expending financial resources to comply or facing penalties for non-compliance. That choice would come for the plaintiffs later, and at that time, when the permits were issued, the challenge would become ripe. The Court declared,

This case is therefore unlike those in which courts have granted review because private parties are confronted with a painful choice between immediate compliance with an agency's policy, at great expense, and the risk of serious penalties should their challenge in a later proceeding be unsuccessful. *Id.* at 673.

Another useful example of an interpretation of the finality requirement where the agency action was not ripe for review is *Bethlehem Steel Corp. v. Environmental Protection Agency*, 536 F.2d 156 (7th Cir. 1976). In that case the Court considered an action of the EPA declaring certain counties in Indiana to be Air Quality Maintenance Areas (AQMA's). By so designating those counties, the EPA became obligated to initiate certain studies and to promulgate rules concerning air pollution reduction in the AQMA's. The petitioners, several companies and one city in the affected areas, sought review of the designations because they presaged potentially large compliance expenses, depending on the exact rules issued and studies undertaken.

The Court held that the dispute was not ripe for consideration. Although designation of the AQMA's could possibly result in rules that would require specific expenditures on the part of the petitioners, those rules had not yet been issued and therefore what their exact form would be was unknown. The Court emphasized that the action of the EPA in designating the AQMA's did not present the choice of compliance or penalty to the petitioners. Because the challenged regulations required no immediate action on the part of the petitioners, and because the regulations did not determine specific legal consequences nor fix concrete rights and obligations between the parties, the Court held that the case was not ripe for judicial review and dismissed the petition. *Id.* at 161.

Only recently, the Supreme Court expounded upon its views that the *Abbott Laboratories* test is to be applied in a pragmatic, common sense manner. In *Federal Trade Commission v. Standard Oil Company of California,* —— U.S. ——, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980), the Court unanimously held that the issuance of a letter by the F.T.C. indicating that the agency had reason to believe that the recipient had violated the laws of unfair competition was not "final action" within the ambit of *Abbott Laboratories.* The Court found that the agency's "reason to believe" determination did not have the status of law demanding immediate compliance but rather represented "a threshold determination that further inquiry is warranted and that a complaint should initiate proceedings." 101 S.Ct. at 493. Further, the Court noted that review at the issuance of the "reason to believe" notice stage would deny the "agency an opportunity to correct its own mistakes and to apply its expertise" and would lead "to piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary." *Id.* at 494.

■ Applying pragmatic concepts to the instant motion, judicial review at this stage of these special, standby rules would be premature and of little value. In essence, these rules provide a mechanism for the promulgation of emergency measures; they establish no specific rights or duties at the present time, nor do they have any force or effect. When the Special Rules are activated, the Administrator of ERA has wide latitude in deciding how and against whom they will be applied. Special Rule number 1 to 10 C.F.R. part 211 provides in part:

Any or all of the provisions of the special rule may be ordered into effect at any time by the ERA Administrator. He may make the special rule effective on either a national or regional basis, upon any category of refined petroleum product or products and residual fuel oil, and with respect to a class of persons or class of transactions.

Because the rules do not at this time fix any legal obligation or duty, they do not force the plaintiff's member firms to choose between compliance or penalty. Despite the label of "final rule" attached to the regulations by the Department of Energy, see 44 Fed.Reg. 3928 (Jan. 18, 1979), the action is not final for purposes of fitness and plaintiff's challenge therefore does not present a justiciable "case or controversy" for judicial review. Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1966).

The plaintiffs also have not satisfied the second branch of the Abbott Laboratories test, i. e., they have not demonstrated serious hardship. "In evaluating the hardship aspect, a court must consider whether the regulations have an immediate and direct impact upon the plaintiffs' conduct of their affairs, with serious penalties attached to non-compliance with the regulations." Standard Oil Co. v. Department of Energy, 596 F.2d 1029 (Temp.Emer.Ct.App.1978). Plaintiff's complaint falls far short of alleging a direct impact from the promulgation of the Special Rules. IGMC claims that giving the power to the Administrator to alter price or allocation levels has "a significant adverse impact on nonbranded independent marketers and small and independent refiners ...." Amended Complaint ¶ 63. This impact, however, results not from the existence of the rules but rather from a hypothetical decision projected by plaintiff occurring at some unspecified date in the future. Additionally, IGMC attempts in its reply to the defendants' motion to characterize its circumstances as difficult because of the "chaotic gasoline marketing situation" (p. 5, Pl. Reply) and because they are left "absolutely uncertain as to the planning or budgeting for their operations." (Id. at 6.) Yet the regulations fix no legal obligations and present the plaintiff with no specific mandates. Plaintiff's general allegation that the discretionary nature of the emergency rules causes great hardship is not a claim of "immediate and direct" impact to justify finding a case or controversy here.

Because this dispute concerns administrative regulations that fix no legal obligations on the plaintiff nor cause any hardship, the case is an abstract, hypothetical challenge to administrative regulations which are not now in effect. A proper challenge to the regulations will lie if and when they are activated and a party is concretely affected by that activation. This plaintiff may well have a cause of action at another time, but currently there is no case or controversy and thus the court lacks jurisdiction. The case will be dismissed.