WEST CENTRAL MISSOURI RURAL DEVELOPMENT CORPORATION et al., Appellants,

District of Columbia (Intervenor),

v.

Raymond J. DONOVAN, Secretary, U.S. Department of Labor.

Norman FONTAINE et al., Appellants,

v.

Raymond J. DONOVAN, Secretary of Department of Labor.

WEST CENTRAL MISSOURI RURAL DEVELOPMENT CORPORATION et al.,

District of Columbia, Appellant,

v.

Raymond J. DONOVAN, Secretary, U.S. Department of Labor.

Nos. 81–1563, 81–1581 and 81–1655.

United States Court of Appeals, District of Columbia Circuit.

Argued July 1, 1981.

Decided July 2, 1981.

---

7. The margin statement made by the court (*see* maj. op. footnote 57) that Warren, a pro se complainant, "did not and cannot allege a judicially remediable claim," jars with the approach of most other federal courts (*see* note 6 and accompanying text *supra*) treating similarly composed allegations of other pro se petitioners as at least worthy of a response. I therefore cannot agree, in light of the contrary indications by other federal courts, that this court can say "with assurance that under the allegations of the pro se [petition], which [must be held] to less stringent standards than formal pleadings drafted by lawyers, it appears 'beyond doubt that the [petitioner] can prove no set of facts in support of his claim which would entitle him to relief.' " *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–596, 30 L.Ed.2d 652 (1972), *quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

8. *But see* note 1 *supra*.

Alan Morrison with whom David C. Vladeck, Washington, D. C., was on the brief, for appellants in No. 81–1581.

James L. Feldesman with whom Alan S. Davis and Martha H. McNeely, Washington, D. C., were on the brief, for appellants in No. 81–1563.

Charles L. Reischel, Deputy Corp. Counsel and Edward E. Schwab, Asst. Corp. Counsel, Washington, D. C., entered appearances for appellants in No. 81–1655.

Whitney Adams, Asst. U. S. Atty. with whom Charles F. C. Ruff, U. S. Atty., Royce C. Lamberth and Kenneth M. Raisler, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before TAMM, MacKINNON and GINSBURG, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM.

Appellants challenged the President's action in early 1981 with respect to two job programs. One *deferred* $606 million in spending under Title II–D of the Comprehensive Employment and Training Act of 1978 (CETA), 29 U.S.C. §§ 801–999, and the second discouraged spending by CETA grantees pending congressional approval of his proposal to *rescind* $234.5 million in budget authority under Title VI of CETA. As authority for both of these measures the President relied upon the Impoundment Control Act of 1974 (ICA), 31 U.S.C. §§ 1400–1407. The district court dismissed appellants' actions in an opinion and order dated May 21, 1981 and reprinted in Appellee's Appendix (App.) at 493–510.

With respect to the Title VI program Congress enacted a bill *rescinding* the appropriation on June 5, 1981, Pub.L.No. 97–12, 95 Stat. 14, and the parties agree that there is now no basis for the challenge by appellants to the alleged premature withholding of expenditures under Title VI. We therefore vacate that portion of the district court's opinion and judgment. *See United States v. Munsingwear, Inc.,* 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950).

As for the *deferral* of budget authority under Title II–D, we affirm the result of the district court, generally for the reasons stated in its May 21 opinion. We reject appellants' claim that the 1978 Comprehensive Employment and Training Act, which was enacted after the Impoundment Control Act, constitutes a mandatory spending statute of the sort envisioned in 31 U.S.C. § 1400(4) of the ICA.[1] There is no provision in CETA specifically barring deferral of budget authority or requiring a particular level of spending, much less re-

---

1. 31 U.S.C. § 1400(4) provides:
   Nothing contained in this Act, or in any amendments made by this Act, shall be construed as—

\* \* \* \* \* \*

(4) superseding any provision of law which requires the obligation of budget authority or the making of outlays thereunder.

ferring to the previously enacted ICA. Nor does the structure of CETA imply an inflexible command to spend. In accordance with 31 U.S.C. § 1403(a) the President reported the II–D deferral to Congress on March 10, 1981 (App. 5), and neither House passed a disapproving resolution. See 31 U.S.C. § 1403(b).

■ We also reject the claim that *deferral* under the Impoundment Control Act may not reach "obligated" money. The distinction drawn by the Act, as the district court explained, is not between "obligated" and "unobligated" money, but between money expended and money not yet expended. The ICA defines "deferral" as "withholding or delaying the obligation *or expenditure* of budget authority," 31 U.S.C. § 1401(1)(A) (emphasis added).

■ We further agree with the district court—and the prior interpretation of another deferral under this Act by the Comptroller General—that the deferral in this case was not an attempt to rescind budget authority in the absence of the required affirmative consent of Congress. Insofar as 31 U.S.C. § 1403(a) provides that "[a] deferral may not be proposed for any period of time extending beyond the end of the fiscal year in which [the deferral is proposed]," the legislative history implicitly reflects that it applies literally only to "one year money." *See* H.R.Rep.No.1101, 93d Cong., 2d Sess. 76 (1974); S.Rep.No.924, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News, 3591, 3616 (joint conference reports).[2] A multi-year appropriation, such as that involved here, may be deferred to the next fiscal year, since the effect is merely a temporary and not a permanent withholding of budget authority. *See Decision of the Comptroller General in No. B–115398.33,* slip op. at 5 (March 20, 1979) ("The proposed [full year] withholding ac-

tion [on a multi-year appropriation] is thus temporary in nature rather than permanent. It follows that under the Impoundment Control Act of 1974 the proposed action of the executive authority [President] has been properly categorized as a deferral of budget authority rather than as a rescission"), *reprinted in* Appellee's Appendix at 149. *See also* 120 Cong.Rec. 20472 (June 21, 1974) (statement of Sen. Ervin); Mikva & Hertz, *Impoundment of Funds—The Courts, The Congress and The President: A Constitutional Triangle,* 69 Nw.U.L.Rev. 335, 387–88 (1974).

■ Appellants' further contention—that the deferral of Title II–D spending is an unlawful *rescission* because the President proposed at the start of next fiscal year to "reprogram" the Title II–D money into other Title II programs—is also misdirected. As the district court noted, "[t]he effect of the deferral is simply to withhold $606 million from obligation until the beginning of FY [fiscal year] 82, when it will be available for use in the Title II–D program unless Congress approves the President's proposed FY 82 budget, reallocating the money to different CETA programs." Appellee's Appendix at 506A. Unexpended appropriations are generally subject to congressional action. The contention that the President is engaged in an unlawful unilateral termination of the Title II–D program is thus premature, and we need not decide whether the President is now authorized to "reprogram" the Title II–D money into other CETA projects.

■ We are also unpersuaded by appellants' assertion that the President is powerless to reduce or terminate CETA grants because these grants amount to contracts binding upon the Department of Labor. Appellants do not contest the district

---

2. The cited House Committee Report states:
   If the President determines that all or part of any budget authority will not be required to carry out the full objectives or scope of programs, or that such budget authority should be rescinded for fiscal policy or other reasons, including the termination of authorized projects, or whenever all or part of

budget authority provided *for only one fiscal year (one-year money)* is to be reserved from obligation for such fiscal year, he shall transmit a special message requesting a *rescission* of the budget authority.
*Id.* 76, U.S.Code Cong. & Admin.News 1974, 3616 (emphasis added).

court's finding that "[g]rant agreements with prime sponsors empower the Department of Labor to make unilateral changes to account for changed funding levels," Appellee's Appendix at 496, and we are satisfied that the regulations cited by the district court are valid and authorize the Department to condition its grants in this manner.

Finally, we join the district court in rejecting appellants' arguments that plans of the prime sponsors were revoked in part in contravention of 29 U.S.C. § 816, and that 29 U.S.C. § 828(a)(1) was violated by the March 13th Field Manual's imposition of a condition for receipt of financial assistance that was not published as a rule in accordance with 5 U.S.C. § 553. Section 816 provides for sanctions and applies only to terminations or revocations of plans for violations of CETA (*Id.*, 816(c)(1)). It does not apply to delays in funding or reductions in funding under ICA that apply to all sponsors. As for the Field Manual, it merely announced that the amount of discretionary funds available would not be used to cover deficits of prime sponsors who did not efficiently manage their resources. This is not a new requirement. It is implicit in the discretionary authority of the Secretary to approve grants.

We thus affirm the propriety of the deferral of Title II–D spending. Our decision is without prejudice to any action appellants may have for breach of any binding contract. The judgment of the district court dismissing the challenges to the deferral is therefore affirmed.

*Judgment accordingly.*

GINSBURG, Circuit Judge, concurs in the result.