**MID–OHIO FOOD BANK, et al., Plaintiffs,**

v.

**Richard E. LYNG, Secretary of Agriculture, et al., Defendants.**

**Civ. A. No. 87–0252–OG.**

United States District Court,
District of Columbia.

July 20, 1987.

David C. Vladeck, Alan B. Morrison and David B. Neumeyer, Washington, D.C., for plaintiffs.

Arthur R. Goldberg, Dennis G. Linder and Robert Chestnut, Dept. of Justice, Washington, D.C., for defendants.

GASCH, District Judge.

## I. INTRODUCTION

This case initially came before the Court on plaintiffs' motion for a temporary restraining order. Plaintiffs challenged defendants' deferral of $28 million of the $50 million Congress appropriated for the Temporary Emergency Food Assistance Program ("TEFAP") in fiscal year 1987.[1] On February 6, 1987, this Court denied plaintiffs' motion for temporary injunctive relief for failure to establish irreparable harm. The Court set a hearing date for argument on plaintiffs' demand for a preliminary injunction. Prior to the hearing, however, the President signed a bill restoring all appropriated funds to the TEFAP program for the remainder of fiscal year 1987. The matter presently before the Court is the viability of plaintiffs' request for declaratory relief in light of the fact that their request for injunctive relief is now moot.

## II. BACKGROUND

WHEREFORE, plaintiffs pray that the Court enter an Order:

1. Temporarily restraining defendants from refusing to make available all TEFAP funds Congress appropriated;

2. Declaring that the deferral provision of the Impoundment Control Act, 2 U.S.C. § 684, provides the sole statutory ground for defendants to implement deferrals for policy reasons, and, because that provision is invalid, the deferral of TEFAP *or any other funds* for policy reasons is without legal basis;

3. Declaring that TEFAP's authorization and appropriations statutes provide

---

1. The TEFAP program provides funds to states to pay the administrative costs incurred in distributing federal surplus commodities such as cheese, cornmeal and rice. These commodities are distributed by state public agencies or nonprofit emergency feeding organizations.

defendants no legal authority to defer funds Congress appropriated for TEFAP;

4. Preliminarily and permanently enjoining the defendants from refusing to make available for obligation in a timely manner the full amount of funds Congress appropriated for TEFAP;

5. Granting plaintiffs their costs and disbursements in this action, including reasonable attorneys' fees, pursuant to 28 U.S.C. § 2412; and

6. Granting plaintiffs such other and further relief as may be just and proper. Complaint at 15–16 (emphasis added).

It is undisputed that the injunctive portion of plaintiffs' claim is no longer alive. Plaintiffs concede that President Reagan, by signing H.R. Joint Resolution 162 on February 12, 1987, restored all of the TEFAP funds at issue in this case. Plaintiffs' Motion for Summary Judgment at 1. Plaintiffs, nevertheless, contend that a live question of declaratory relief remains: (1) whether the President may continue to make "policy deferrals" of any funds following the recent case of *City of New Haven v. United States*, 809 F.2d 900 (D.C. Cir.1987), wherein the D.C. Circuit invalidated the deferral provisions in the Impoundment Control Act ("ICA"), 2 U.S.C. § 684.[2] Plaintiffs assert that they have requested declaratory relief not only with respect to TEFAP funds, but also to "any other funds." Complaint at 15, ¶ 2 (quoted above).

Defendants raise arguments of justiciability as well as arguments on the merits. In brief, defendants claim that the merits need not be addressed as plaintiffs' claims are both moot and unripe for adjudication and, further, that plaintiffs lack standing to maintain this action. Alternatively, on the merits, defendants aver that the Court,

in its equitable discretion, should dismiss the complaint or should find that the executive branch retains the authority to defer funds apart from the Impoundment Control Act, *e.g.*, through the Pay Act provision of the Continuing Resolution for 1987, § 144(a)(3)(A), Pub.L. No. 99–591, 100 Stat. 3341–353. The 1987 Pay Act increased pay and benefits for federal employees during fiscal year 1987 and thereby created additional costs for the agencies that employ them.[3]

Plaintiffs note that the proposed TEFAP deferral was one of 24 policy deferrals reported to Congress on January 28, 1987, by the Director of the OMB. In a supplemental memorandum filed on April 8, 1987, plaintiffs notified the Court that presently there is pending before the House of Representatives an appropriations bill that overturns many, if not all, of the remaining policy deferrals implemented by the executive branch this fiscal year. This bill also provides funds to finance the pay raises called for in the 1987 Pay Act. According to plaintiffs, the bill has been reported out of the House Appropriations Committee and is awaiting action by the full House. *See* H.R. 1827, 100th Cong., 1st Sess. (1987).

## III. DISCUSSION

The merits of plaintiffs' request for declaratory relief presents a long-standing problem of political in-fighting between the executive and legislative branches over presidential impoundments. Serious questions of justiciability, however, prevent this Court from addressing the merits of the declaratory judgment sought.

At the outset, the Court notes that earlier proceedings in this case exclusively fo-

---

**2.** The D.C. Circuit has described a "policy deferral" as a deferral proposed by the President which is "ordinarily intended to *negate* the will of Congress by substituting the fiscal policies of the Executive Branch for those established by the enactment of budget legislation." *City of New Haven*, 809 F.2d at 901.

**3.** As noted by the parties, the 1987 Pay Act provision states, in pertinent part,

Notwithstanding any other provision of law, determinations relating to amounts to be appropriated in order to provide for the adjustment described in paragraph (1) shall be made based on the assumption that the various departments and agencies of the Government will, in the aggregate, absorb 50 percent of the increase in total pay for fiscal year 1987.

Section 144(a)(3)(A), Pub.L. No. 99–591, 100 Stat. 3341–353.

cused on the TEFAP program and the deferral of funds by the President for that program alone. Plaintiffs argue that all other policy deferrals were challenged in their prayer for relief by inclusion of the words "or any other funds." Realistically, however, this case presents no substantive challenge of other policy deferrals. Plaintiffs sought no injunctive relief for federal funding other than that earmarked for the TEFAP program. The Court is entirely uninformed as to what these additional deferrals may involve, *e.g.*, the nature of the appropriations, the sums of money at issue, the statutory provisions affected or the dates upon which these deferrals will begin to draw down the subject funds. Accordingly, there is a serious problem of whether this Court legitimately may grant declaratory relief, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a),[4] without a sufficient factual predicate. *See Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969) (in all actions, including those for declaratory relief, federal courts must not render advisory opinions).

On the basis of this lack of information, the Court excludes from its review all policy deferrals *other than* the TEFAP deferral. A substantive challenge to all 24 policy deferrals simply was not discussed or set out fully in plaintiffs' complaint, in subsequent briefing, or in the proceedings for injunctive relief. As this Court has no knowledge of the nature of those other deferrals or the authority relied upon by the President for deferring those other funds, review of this demand for declaratory relief is confined to the deferral of funds for the TEFAP program.

### A. *Mootness*

■ Plaintiffs correctly note that a Court may award declaratory relief when the need for injunctive relief has been removed but the challenged government practice continues. *See Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 121–22, 94 S.Ct. 1694, 1697–98, 40 L.Ed.2d 1 (1974); *Roe v. Wade*, 410 U.S. 113, 166, 93 S.Ct. 705, 733, 35 L.Ed.2d 147 (1973). This issue of mootness, as well as the substantive questions underlying the instant action, were presented in the recent case of *City of New Haven v. United States, supra*. In *City of New Haven*, the D.C. Circuit was called upon to decide the President's statutory authority under section 1013 of the Impoundment Control Act to delay, for policy reasons, the expenditure of funds appropriated by Congress. On the merits, the Court concluded:

> Section 1013 was designed specifically to provide Congress with a means for controlling presidential deferrals. As a consequence of the Supreme Court's decision in *Chadha*, however, that section has been transformed into a license to impound funds for policy reasons. This result is completely contrary to the will of Congress, which in amending the Anti-Deficiency Act sought to *remove* any colorable statutory basis for unchecked policy deferrals. We cannot imagine that Congress would have acted in complete contravention of its intended purposes by enacting section 1013 without a legislative veto provision. Accordingly, we hold that the unconstitutional legislative veto provision contained in section 1013 is inseverable from the remainder of the section, and we affirm the judgment of the District Court invalidating section 1013 in its entirety.

809 F.2d at 909 (citing to *INS v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983); emphasis in original).

Prior to determining the merits, however, the Court found that the challenge to the President's deferral authority under section 1013 was not mooted by recent

---

4. The Declaratory Judgment Act states, in pertinent part:

> In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

legislation overturning the HUD deferrals at issue in that case. *Id.* at 904–05. The Court found that the challenge to the President's reliance on the Impoundment Control Act survived since the executive branch foresaw continued reliance upon the challenged Act and plaintiffs were likely to be affected by such deferrals in the future. *Id.* In so holding, the Court followed its earlier decision in *Better Government Association v. Department of State*, 780 F.2d 86, 90–92 (D.C.Cir.1986).

In *Better Government,* plaintiffs challenged both the specific denial of their entitlement to a waiver of search and copying fees in a Freedom of Information Act ("FOIA") request and the facial validity of the agencies' guidelines and regulations governing a denial of a fee waiver demand. Although, subsequent to suit, the agencies granted the fee waivers, the D.C. Circuit held that the challenge to the agencies' guidelines remained viable as the government had not disavowed reliance on the challenged policies and "clearly intend[ed] to apply [the] purportedly objectionable standards to FOIA fee waiver requests in the future." *Id.* at 91. The Court also noted that plaintiffs were frequent FOIA requesters.

In these cases cited above, claimants challenged the government's authority to proceed under a given statute or regulation. *See City of New Haven,* 809 F.2d at 904 (challenge to President's authority under section 1013 of ICA); *Better Government,* 780 F.2d at 91 (challenge to particular agency guidelines and regulations respecting FOIA fee waiver requests). In *Super Tire Engineering Co. v. McCorkle, supra,* another key case regarding extant claims for declaratory relief where a related claim for injunctive relief has been rendered moot, the Supreme Court found that the challenged government labor policy was continuing, was "fixed and definite" and was "not contingent upon executive discretion." 416 U.S. at 123–24, 94 S.Ct. at 1698–99. For those reasons, the Court held that injury to plaintiffs continued, a live case or controversy existed and thus, the claim for declaratory relief was not moot.

After these decisions, *Super Tire, Better Government* and *City of New Haven,* it is evident that a claim for declaratory relief may live beyond a mooted claim for injunctive relief where (1) the government indicates continued reliance on its challenged practice, (2) where plaintiffs will suffer continued injury from the government practice, and (3) where the government practice at issue is well-defined, "fixed and definite."

The Court finds that none of the above criteria exists in the case at hand. Simply put, there are too many contingencies inherent in plaintiffs' claim of continuing injury from future TEFAP deferrals. Before the *possibility* of another TEFAP deferral may be realized, Congress must first reauthorize the TEFAP program and the President must, in his discretion, decide to defer some or all of the reappropriated funds. The parties submit that the current TEFAP program expires on September 30, 1987. Plaintiffs note, however, that there is pending congressional action to reauthorize this program. It is difficult for this Court to estimate the likelihood of passage of the pending TEFAP legislation. Similarly, it is impossible to estimate whether the President will again defer TEFAP monies. Such a deferral is contingent entirely upon executive discretion.

Thus, the case at bar is unlike the situation in *Better Government* where the challenged government policies were "clearly" going to apply to future FOIA fee waiver requests or the situation in *City of New Haven* where the government conceded continued reliance on the challenged Impoundment Control Act. The challenged government policy in the instant case is also in direct contrast to the government labor policies at issue in *Super Tire* which were "fixed and definite" and "not contingent upon executive discretion." *Super Tire,* 416 U.S. at 124, 94 S.Ct. at 1699. In short, any future deferral of TEFAP funds rests upon several major events which may not ever occur.

Plaintiffs further argue that they will suffer continued injury which is "capable of repetition yet evading review" because

there is a "reasonable expectation" that TEFAP funds will again be impounded. *See Weinstein v. Bradford,* 423 U.S. 147, 148, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975) (per curiam). In *Super Tire,* the Supreme Court stated that under a "capable of repetition" justiciability analysis, a litigant must "show the existence of an immediate and definite governmental action or policy that has adversely affected and continues to affect a present interest." 416 U.S. at 125–26, 94 S.Ct. at 1699–1700. The Court fully understands that a deferral is considered to be a temporary withholding, not to last more than one year. *See West Central Missouri Rural Development Corp. v. Donovan,* 659 F.2d 199, 202 (D.C. Cir.1981). The Court, however, is more concerned with the definiteness of a future TEFAP deferral, an event which, at this point in time, seems riddled with contingencies.

In sum, the Court finds that this action for declaratory relief is moot under the language of the *Super Tire, Better Government* and *City of New Haven* cases. In contrast to those cases, the circumstances of the case at bar suggest that the "government practice" at issue, *i.e.,* deferral of future TEFAP funds, is not a reasonable certainty at this time. For this reason, this claim for declaratory relief lacks the constitutional requirement of a "case or controversy" for any judgment issued by a court must resolve " 'a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975) (quoting *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1957)).

#### B. *Ripeness*

■ Alternatively, the Court finds that this matter lacks justiciability for it is not ripe. Like mootness, the ripeness doctrine "overlaps" with Article III requirements of a case or controversy. *See Eagle-Picher Industries, Inc. v. EPA,* 759 F.2d 905, 915

(D.C.Cir.1985). The basic rationale behind the doctrine

> is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1966).

This case implicates the prudential aspects of the ripeness doctrine. The ripeness inquiry covers pragmatic concerns such as an agency's "interest in crystallizing its policy before that policy is subjected to judicial review," "the court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete setting" and "the petitioner's interest in prompt consideration of allegedly unlawful agency action." *Eagle-Picher Industries,* 759 F.2d at 915. In the case at bar, the "agency action" challenged is the deferral by the executive branch of TEFAP funds. In *Abbott Laboratories,* the Supreme Court announced a twofold test for balancing the interests of the Court, the agency and the petitioner in order to determine the ripeness of the action. That test mandates an evaluation of "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories,* 387 U.S. at 149, 87 S.Ct. at 1515.

Under the "fitness of the issues" prong, a Court must decide that where a purely legal issue is raised, would the Court or the agency benefit from postponement of judicial review until "the action or policy in question has assumed either a final or more concrete form." *Better Government,* 780 F.2d at 92; *Eagle-Picher Industries,* 759 F.2d at 915. The case at hand does involve a purely legal question. Both the Court and the executive branch would benefit, however, if the government practice on the deferral of TEFAP funds was more definitive and final. *See Better*

*Government,* 780 F.2d at 93. As stated previously, it is not certain that, if TEFAP funds are again appropriated, the executive will defer them. Moreover, in light of the decision in *City of New Haven,* it is likely that Congress will consider the subject of presidential impoundments in new legislation that is not hampered by the inclusion of a legislative veto provision. Part of the awkwardness of the action before the Court is that plaintiffs want the Court to "legislate" before the Congress has had the chance to enact deferral legislation to replace the ICA deferral provision recently invalidated in *City of New Haven.*

Finally, under a ripeness analysis, a court must examine a claimant's interest in immediate review. "In order to outweigh any institutional interests in the deferral of review, [claimants] must demonstrate 'hardship,' *i.e.,* that 'the impact of the administrative action could be said to be felt immediately by those subject to it in conducting their day to day affairs.'" *Better Government,* 780 F.2d at 92 (quoting *Toilet Goods Assoc. v. Gardner,* 387 U.S. 158, 164, 87 S.Ct. 1520, 1524, 18 L.Ed.2d 697 (1967)). Plaintiffs have shown no convincing "hardship" if review were delayed. The TEFAP funds are being supplied for 1987. Plaintiffs aver that those "involved in the TEFAP program are confronted with the very real possibility that the program will be subject to deferrals in the future." Plaintiffs' Reply at 13. While this "possibility" may be real, it is contingent on the occurrence of a number of events, as mentioned earlier. Indeed, at this point in time, plaintiffs face a similar "possibility" that they will lose 1988 TEFAP funds due to congressional inaction or failure to appropriate the necessary monies.

There is no immediate and compelling need for a ruling on the merits of the revoked deferral at issue here. At worst, the only hardship plaintiffs would endure as a result of delaying consideration of the merits is "the burden of having to file another suit [and] [t]his is hardly the type of hardship which warrants immediate consideration of an issue presented in abstract form." *Webb v. Department of Health*

*and Human Services,* 696 F.2d 101, 107 (D.C.Cir.1982).

In sum, the Court concludes that plaintiffs have not shown any immediate and practical impact to counter the substantial interests militating against review. *See Diamond Shamrock Corp. v. Costle,* 580 F.2d 670, 672–73 (D.C.Cir.1978) (in a ripeness analysis, those seeking review must demonstrate that the agency or governmental action has an "immediate and practical impact" upon them). Postponement would serve no hardship. Moreover, "in the absence of hardship only a minimum showing of countervailing judicial or administrative interest is needed, if any, to tip the balance against review." *Diamond Shamrock Corp. v. Costle,* 580 F.2d at 674.

### C. *Remaining Issues*

It is conceivable that this action is not justiciable because plaintiffs lack standing to attain the declaratory judgment they seek. However, it is unnecessary to decide the standing issue since the Court has decided to dismiss the case on mootness and ripeness grounds.

Defendants further suggest that this Court should exercise its "remedial" or "equitable" discretion and dismiss the case. The Court recognizes that, in numerous matters where congressional plaintiffs arguably had standing to proceed, this Circuit invoked the doctrine of equitable discretion and declined to resolve "'difficult questions concerning the relationship between the legislative and executive branches.'" *Moore v. House of Representatives,* 733 F.2d 946, 955 (D.C.Cir.1984) (quoting *Wilderness Society v. Morton,* 479 F.2d 842, 887 (D.C.Cir.) (en banc), *cert. denied,* 411 U.S. 917, 93 S.Ct. 1550, 36 L.Ed.2d 309 (1973)), *cert. denied,* 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed.2d 775 (1985). *See also Riegle v. Federal Open Market Committee,* 656 F.2d 873, 881 (D.C.Cir.), *cert. denied,* 454 U.S. 1082, 102 S.Ct. 636, 70 L.Ed. 2d 616 (1981). The Court, however, finds no need to resort to this equitable doctrine when grounds exist under the law to dismiss this action. *See Moore, supra,* 733 F.2d at 961–65 (concurring opinion by Sca-

lia, J.) (criticizing the application of "equitable discretion" doctrine instead of applying the "principled and intelligible doctrine of standing").

## IV. CONCLUSION

For the reasons discussed above, the Court finds that this matter is both moot and not ripe for adjudication. The Court declines to render an advisory opinion on the issue of presidential impoundments. Accordingly, this action is dismissed.

### ORDER

Upon consideration of the parties' cross-motions for summary judgment, the oppositions thereto and the entire record herein, and for the reasons set forth in the accompanying memorandum, it is by the Court this 20th day of July, 1987,

ORDERED that plaintiffs' motion for summary judgment be, and hereby is, denied; and it is further

ORDERED that defendants' motion for summary judgment be, and hereby is, granted.